STATE OF CONNECTICUT *v.* JOHN SMALL
(AC 22939)

Schaller, Flynn and Stoughton, Js.

Argued May 1—officially released July 15, 2003

*Earl I. Williams*, special public defender, with whom, on the brief, was *Rebecca L. Johnson*, for the appellant (defendant).

*Julia K. Conlin*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Robin S. Schwartz*, former assistant state's attorney, and *James R. Dinnan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, John Small, appeals from the judgments of conviction, rendered after he

admitted to three counts of violation of probation in violation of General Statutes § 53a-32 and pleaded guilty to one count of breach of the peace in violation of General Statutes (Rev. to 2001) § 53a-181. On appeal, the defendant claims that the trial court (1) failed to canvass him properly concerning his guilty plea on the charge of breach of the peace, and (2) violated his due process rights when it denied his motion to withdraw his admissions and his guilty plea, and imposed a greater sentence than he had bargained for in the plea agreement. We agree in part with the defendant. We conclude that the court's canvass on the charge of breach of the peace was insufficient. We further conclude that there was no evidentiary basis for any finding that the defendant's *Garvin* agreement[1] had been breached. Accordingly, we reverse the judgments of the trial court and remand the cases for further proceedings.

The following facts and procedural history are undisputed. On January 23, 2002, the defendant admitted to violation of the probation imposed as a part of the sentences for three separate criminal offenses for which the total effective term of the suspended sentences was seven years and eleven months. The prosecutor described the violations of probation, most of which arose out of violent behavior, and recommended that the defendant serve two years and six months of the suspended sentences. The prosecutor also informed the court that he would not object to a request by defense counsel that the case be continued for two weeks, but requested that the court issue specific orders that the

[1] A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement. See *State* v. *Garvin*, 242 Conn. 296, 299–302, 699 A.2d 921 (1997). The term *Garvin* canvass is used to designate a canvass of a conditional plea agreement made pursuant to *Garvin*.

defendant have absolutely no contact with the victims and that it conduct a *Garvin* canvass.

After the court had made the necessary inquiries and determined that the admissions by the defendant had been made knowingly and voluntarily, the court turned to the plea agreement itself. It continued the matter for two weeks and informed the defendant that it would impose a sentence of two years and six months, and that if it decided to impose a greater sentence, it would allow him to withdraw his plea, except that if he failed to appear or if he was arrested again, the court would not be bound by the agreement and would impose a sentence of four years and eleven months. The defendant agreed to those conditions.[2] The court then informed the defendant that there was to be no contact between him and the victims. The defendant stated that he did not agree with many of the allegations being made against him, but that he understood that if he became involved again with the people making those allegations, the plea would be withdrawn. The court disabused the defendant of that notion at once and informed him that if he became involved with them again, he would be incarcerated for four years and eleven months.[3] The defendant agreed to that condition,

[2] "The Court: Two and one-half years to serve. Sir, I'm going to give you two weeks to turn yourself in, February 6 [2002]. Now, sir, my promise to you is that on February 6, I'm going to impose a sentence of two and one-half years to serve. That's my promise I'm making to you. If I decide to give you more, I'll allow you to withdraw your plea and go back to a hearing. If, however, you fail to appear, you pick up any new files or any new arrests, I will not be bound by that agreement and I will give you five years in jail—was it five years?

"[Prosecutor]: It would be four years and eleven months.

"The Court: Four years and nine months.

"[Prosecutor]: Four years and eleven months.

"The Court:—four years and eleven months in jail. Do you understand that and do you agree to that?

"[Defendant]: Yes. I agree to that. . . ."

[3] "The Court: All right. There's also to be no contact between you and the victims. No contact means no contact, not by phones, beepers or third parties. All right. And what do you wish to say, sir?

but when he expressed concern that there might be false allegations made against him, the court replied that it would have to find probable cause.[4] After further colloquy, the defendant agreed that he did not want to have a hearing on the violation of probation charges and that he would have no contact with the victims. The court again stressed that there was to be no contact, and informed the defendant that if it found out that there was contact and believed that there was probable cause for an arrest, it would be able to sentence him to as much as four years and eleven months. The defendant stated that he agreed and understood, and defense counsel acknowledged his belief that the defendant had agreed pursuant to the canvass under *State* v. *Garvin*, 242 Conn. 296, 299–302, 699 A.2d 921 (1997).[5]

The following day, January 24, 2002, the defendant was present in court, and the prosecutor informed the

"[Defendant]: Okay. I do disagree with a lot of things that are going on that people are saying that I did or said. Okay. And, I hear you tell me that if I get involved with them again or whatever, you're going to withdraw my plea.

"The Court: No, you get involved with them again [and] you're going to jail for four years [and] eleven months."

[4] "[Defendant]: Four years [and] seven months, whatever—

"The Court: Eleven months.

"[Defendant]:—eleven months, whatever you suggest. Okay. Well, I feel as though like this, a lot of the stuff that's being said in these things is a lie. So, they can call here and say the same lie, then somebody come get me for—

"The Court: It has to be—I have to find probable cause . . . ."

[5] "The Court: All right. No contact means no contact, not by phones, beepers or third parties. If I find out you're having contact and I feel there's probable cause for the arrest, I can give you up—I will be able to give you up to four years and eleven months in jail. Do you agree to that?

"[Defendant]: Yes, I did.

"The Court: All right. And you understand that. Counsel, is it your belief that your client is making a full, voluntary waiver of his rights and full agreement, [a knowledgeable] agreement with regard to the canvass [pursuant to *State* v. *Garvin*, supra, 242 Conn. 299–302]?

"[Defense Counsel]: Yes, it is, Your Honor.

"The Court: All right, sir. Good luck. Two weeks."

court that the witnesses with whom the defendant had been ordered to have no contact had been in court the day before and that when they left the court, the defendant had had contact with them. The prosecutor referred to a police report and informed the court that the witnesses had given statements to the police as to what was said, and that two judicial marshals who had escorted the witnesses out to a car thought that the defendant's friends were trying to move him away from the car. The defendant stated that he was not near the car and that his friends were moving him away from the courthouse. The prosecutor requested that the defendant be sentenced to serve the full amount of time that he owed.[6]

Defense counsel thereupon sought to withdraw the admissions of probation violation and the guilty plea because an agreement pursuant to *Garvin* should not be enlarged to cover anything beyond failures to appear and because he believed that sentencing would be based on the new arrest. He also stated that the defendant had witnesses who would contradict what appeared in the reports and that he would like an opportunity to litigate the issue.

---

[6] "The Court: What was he observed doing?

"[Prosecutor]: He was observed what the [marshal]—when [judicial marshals] walked witnesses out to the car and were leaving, the defendant was on the corner, the witness' car pulled up—the defendant was observed by the two marshals; they couldn't hear anything but—

"[Defendant]: I was near no car, man.

"[Prosecutor]:—head motions and that his friends were trying to stop him from having any—in their opinion moving him a little away from the car.

"The Court: He was moving—was he approaching the vehicle is that—

"[Prosecutor]: The friends were trying to move him away. I don't know if—

"[Defendant]: From the courthouse.

"[Prosecutor]:—he was actually approaching the vehicle.

"The Court: Be [quiet].

"[Prosecutor]: The victims indicated that he had said things to them of a threatening nature. The state feels it's extremely serious conduct, and the defendant should be sentenced on the violation of probation to the full time owed."

The court responded that it had canvassed the defendant thoroughly and had informed him that it would allow him to withdraw his pleas if it intended to impose a sentence of more than two years and six months unless he was arrested again or had any contact with the victims. The court stated that it was looking at the police report, which indicated that there were affidavits from two victims and that there was contact with them after they had left the courtroom. The court deemed the report reliable because two judicial marshals had observed the defendant in close proximity to the car, presumably the car to which the witnesses or victims were being escorted. The court decided that there had been contact in violation of its order, which it expressed as an order not to initiate contact, denied the motion and imposed a sentence of four years and eleven months pursuant to the agreement.[7]

The defendant then uttered a scatological remark, a word seldom heard in the courtroom, but which is, we believe, not uncommon on the street. That quite properly provoked the court to warn the defendant that he would be held in contempt in the absence of an apology. After the defendant apologized, he was removed from the courtroom. The court then extended the defendant the right of allocution, which understandably had been overlooked, but the offer was declined,

---

[7] "The Court: I'm looking at the police report that indicated there were two sworn affidavits by two of the victims, that there was subsequent contact, no more than fifteen or twenty minutes or five minutes after they left the courtroom. In my view, this is reliable insofar as the [judicial marshals] indicated that they observed this defendant in close vicinity to your client's vehicle, and they indicated that there was some type of action, although they could not exactly hear what was going on.

"So, at the very least, I feel that the—there was contact, a violation of the court order. There was an order not to initiate contact. I feel that the information garnered by the—or from the victims and the contact corroborated by the [judicial marshals] is reliable. In light of those factors, I'm going not—deny your motion to withdraw your plea and sentence the defendant today, four years, eleven months pursuant to the agreement. Good luck."

apparently on the advice of counsel. Under the circumstances, the defendant never gave his version of the events from the day before.

I

The defendant first claims that the court violated his due process rights because the court failed to canvass him concerning the guilty plea to the charge of breach of the peace. The state agrees that the defendant was not properly canvassed. Because the record does not disclose a waiver of the three core constitutional rights guaranteed by the federal constitution, the defendant's guilty plea to that charge must be vacated. See, e.g., *State* v. *Domian*, 235 Conn. 679, 686–87, 668 A.2d 1333 (1996).

II

Next, the defendant claims that his rights to due process were violated when the court denied his motion to withdraw his admissions and his guilty plea, and imposed a sentence greater than that bargained for in the plea agreement. The defendant sets forth three arguments in support of his claim, which we will set out more fully. In addition, the defendant argues that the court improperly found that he had violated the terms of his *Garvin* agreement. The principal issue in this appeal, however, depends on whether the court properly imposed a sentence greater than that bargained for under the principle enunciated in *State* v. *Garvin*, supra, 242 Conn. 296.

The state asserts in its brief that the sole basis for the defendant's motion to withdraw his admissions was that *Garvin* agreements should not be enlarged to cover anything more than failures to appear and, therefore, that his claims on appeal were not preserved at trial and should not be reviewed.

A

First, the defendant argues that under a *Garvin* plea agreement, a court may not impose any condition on the sentencing agreement except a failure to appear for sentencing. We do not agree.

"The validity of plea bargains depends on contract principles." Id., 314. In *Garvin*, the trial court had warned the defendant at the time of his guilty pleas that if he failed to appear for sentencing, the court would not be bound by the agreed on sentence. Id., 300. When the defendant failed to appear and subsequently was apprehended, the court refused to allow him to withdraw his pleas and imposed a sentence greater than that to which he had agreed. Id., 300–301. The condition of the plea agreement, which the defendant had failed to satisfy, was that he appear for sentencing. Id. *Garvin*, however, does not suggest that a failure to appear is the only condition that may be imposed on the agreement. Id., 314.

In *State* v. *Trotman*, 68 Conn. App. 437, 440, 791 A.2d 700 (2002), this court, following *Garvin*, upheld the finding of the trial court that the defendant had breached her plea agreement when she produced urine samples that tested positive for opiates. Because the defendant had been unambiguously warned by the court and was aware of and understood her obligation not to produce positive urine samples, the court properly imposed a sentence of incarceration instead of the suspended sentence to which she had agreed. Id., 445. Consequently, we see no reason why the failure to fulfill any condition to which a defendant agrees should not have the same result, at least as long as it is within the defendant's control to fulfill the condition. Id., 444; see also *State* v. *Garvin*, supra, 242 Conn. 314.

## B

Next, the defendant argues that the court failed to articulate and to clarify the circumstances under which he would forfeit his right to withdraw his admissions.

We acknowledge that the court must clarify the terms of the plea agreement. *State* v. *Childree*, 189 Conn. 114, 454 A.2d 1274 (1983). The circumstances under which the defendant would have the right to withdraw his admissions and the circumstance that might give rise to the imposition of the greater sentence were made abundantly clear and were clearly understood by the defendant, as is made manifest by the transcript references we have set forth. See footnotes 2 through 7.

## C

Last, the defendant claims that his due process rights were violated because the court found, on the basis of the evidence, that he had violated the terms of his *Garvin* agreement by having contact with the victims. The claim that the court improperly found, on the basis of the evidence, that the defendant had violated the terms of his agreement is a sufficiency of the evidence claim. Furthermore, we deem that claim properly preserved on appeal because the defendant informed the trial court, prior to sentencing, that he wanted to withdraw his admissions because he believed that his sentence would be based on the new arrest and that he had witnesses who would contradict what was in the police report. The standard of review is whether, on the basis of the evidence, the court's finding of a breach of the agreement was clearly erroneous. *State* v. *Trotman*, supra, 68 Conn. App. 441.

After the defendant had been presented for arraignment on January 24, 2002, on a charge resulting from the episode from the previous day, the prosecutor described briefly what appeared in the police report

and requested that the defendant be sentenced to serve the full amount of time that he owed. Defense counsel then requested that the admissions and the plea be withdrawn, as previously discussed, stating that he had witnesses to contradict what was in the reports and statements, and that he wanted to litigate the matter. The court discussed the plea agreement that had been made and then stated that it was looking at the police report, which indicated that the defendant had had contact with the victims, and that the report was reliable because two judicial marshals had observed the defendant in close proximity to the car to which the victims were being escorted at the time. The court found that the defendant had contact with the victims in violation of its order, denied the motion and imposed sentence.

There was no evidence presented to the court from which it could have made a finding of a violation of its order. At the most, the court had a police report that was never made an exhibit and which is not a part of the record. Whatever the report contained, the defendant stated that he had witnesses to contradict its content. The prosecutor conceded at oral argument that the court had to make a finding that the *Garvin* agreement had been breached before it could impose the greater sentence. There was nothing presented to the court, as far as the record reveals, from which the court could have found that the defendant had initiated contact. Because there was no evidentiary basis for any finding, the sentence imposed on the charges of violation of probation must be vacated.

The judgments are reversed and the cases are remanded with direction to vacate the defendant's guilty plea to the charge of breach of the peace and the sentence imposed for violation of probation and for an evidentiary hearing to determine whether the defendant breached the plea agreement.

In this opinion the other judges concurred.