## STATE OF CONNECTICUT *v.* LINDA M. STEVENS
## (SC 17320)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued February 14—officially released May 2, 2006

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *John A. Connolly*, state's attorney, and *David Gulick*, assistant state's attorney, for the appellant (state).

*Richard W. Callahan*, special public defender, with whom was *Jane E. Carroll*, special public defender, for the appellee (defendant).

*Opinion*

KATZ, J. The state appeals from the judgment of the Appellate Court reversing the judgment of conviction of the defendant, Linda M. Stevens, who had appealed to that court challenging the sentence imposed on her by the trial court, in accordance with an agreement pursuant to *State* v. *Garvin*, 242 Conn. 296, 699 A.2d 921 (1997),[1] subsequent to her plea of guilty under the *Alford* doctrine,[2] to the charge of possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal to the Appellate Court, the defendant claimed that the trial court had violated her federal and state due process rights by imposing as one of the conditions of the *Garvin* agreement that, if the defendant were to be arrested prior to her sentencing and the court were to find that there was probable cause for that arrest, the court could enhance her three year sentence under

---

[1] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by the defendant's violation of a condition of the agreement. See *State* v. *Garvin*, [supra, 242 Conn. 299–302]." *State* v. *Stevens*, 85 Conn. App. 473, 474 n.2, 857 A.2d 972 (2004).

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 204–205, 842 A.2d 567 (2004).

the plea agreement to seven years and not allow her to withdraw her plea. *State* v. *Stevens*, 85 Conn. App. 473, 474, 857 A.2d 972 (2004). The Appellate Court agreed with the defendant that the trial court improperly had enhanced her sentence based on her arrest pending sentencing and remanded the case to the trial court with direction either to grant specific performance of the *Garvin* agreement by imposing a three year sentence or to reject the agreement altogether in conformity with the rules of practice. Id., 480. We thereafter granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly reverse the trial court's judgment sentencing the defendant to seven years?" *State* v. *Stevens*, 272 Conn. 902, 863 A.2d 695 (2004). We agree with the state that the no arrest condition was valid and that the trial court acted properly, after finding probable cause for the arrest, in imposing the seven year sentence. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following facts and procedural history that are relevant to our resolution of the state's appeal. "On August 6, 2002, in exchange for a sentence of three years incarceration, the defendant pleaded guilty to a charge of possession of narcotics in violation of § 21a-279 (a).[3] The court advised the defendant that if she was arrested with probable cause subsequent to making her plea, but prior to sentencing, the court could enhance her sentence from the agreed three years to seven years, and she would not be able to withdraw her plea. Two days later, on August 8, 2002, the police arrested the defendant

[3] The state initially had charged the defendant with possession of narcotics, possession of less than four ounces of marijuana and use of drug paraphernalia. Thereafter, the state entered a nolle prosequi as to the charges of possession of less than four ounces of marijuana and use of drug paraphernalia.

and charged her with several [drug offenses].[4] On October 17, 2002, the defendant appeared for sentencing on the charge of possession of narcotics, to which she had pleaded guilty, under the *Alford* doctrine, on August 6, 2002. Taking note of the defendant's August 8, 2002 arrest, and declaring there to have been probable cause for that arrest, the court, pursuant to the terms of the August 6, 2002 *Garvin* agreement, sentenced the defendant to seven years incarceration." *State* v. *Stevens*, supra, 85 Conn. App. 475.

Thereafter, the defendant appealed from the judgment of conviction to the Appellate Court, claiming that, by adding the no arrest condition to the plea agreement and by using it to enhance her sentence,[5] the trial court had violated the principal tenet of *State* v. *Garvin*, supra, 242 Conn. 314, that a court may impose sentences predicated on the defendant's failure to fulfill a condition of the agreement, but only as long as "[f]ulfillment of [the] condition [is] within the defendant's control." Additionally, the defendant claimed that the trial court had failed to determine the issue of whether the *Garvin* agreement had been breached in accordance with the requirements of procedural due process because the trial court had not held a hearing to determine whether she had breached the agreement by engaging in criminal conduct, not merely by having been arrested. She claimed that she should have been sentenced to the three years pursuant to her plea agreement or that, at the very least, the state should

[4] The August 8, 2002 police incident and offense report submitted to the court reflects that the defendant was charged with possession of one-half gram or more of cocaine in freebase form with intent to sell in violation of General Statutes § 21a-278 (a), illegal possession of narcotics in a school zone in violation of § 21a-279 (d), and possession of marijuana in violation of § 21a-279 (c).

[5] The defendant's appeal challenged only the imposition of the enhanced sentence and did not seek either to withdraw her plea or to vacate her plea agreement.

have been required to prove that she had breached the agreement by a preponderance of the evidence. The state contended that, pursuant to the terms of the *Garvin* agreement, the seven year sentence was proper and that the defendant's procedural due process rights had not been violated.

The Appellate Court reversed the judgment, concluding that the sentence must be vacated and the case remanded to the trial court.[6] *State* v. *Stevens*, supra, 85 Conn. App. 480. The court determined that, under *Garvin* and our rules of practice, because fulfillment of the no arrest condition was not exclusively within the defendant's control, as would be, for example, a condition requiring that a defendant appear for sentencing, it was improper for the trial court to impose that requirement as a condition of the plea agreement.[7] Id., 477–78. The Appellate Court further reasoned that, by imposing the seven year sentence, the trial court actually was rejecting the defendant's guilty plea and therefore was required under Practice Book § 39-10; see footnote 7 of this opinion; to afford the defendant an

[6] Although the defendant had failed to raise her claim before the trial court, the Appellate Court concluded that the defendant had satisfied all four prongs of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, therefore, was entitled to appellate review and relief.

[7] Specifically, the Appellate Court cited to Practice Book §§ 39-9 and 39-10. Practice Book § 39-9 provides in relevant part: "If the case is continued for sentencing, the judicial authority shall inform the defendant that a different sentence from that embodied in the plea agreement may be imposed on the receipt of new information . . . but that if such a sentence is imposed, the defendant will be allowed to withdraw his or her plea in accordance with Sections 39-26 through 39-28."

Practice Book § 39-10 provides: "If the judicial authority rejects the plea agreement, it shall inform the parties of this fact; advise the defendant personally in open court or, on a showing of good cause, in camera that the judicial authority is not bound by the plea agreement; afford the defendant the opportunity then to withdraw the plea, if given; and advise the defendant that if he or she persists in a guilty plea or plea of nolo contendere, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

opportunity to withdraw her plea. *State* v. *Stevens*, supra, 479. The court concluded that to do otherwise would deprive the defendant of a liberty interest without due process. Id., 477. This certified appeal followed.

On appeal to this court, the state claims that the Appellate Court acted improperly because the trial court reasonably had sentenced the defendant in accordance with the terms of the *Garvin* agreement and in accordance with the defendant's rights to due process.[8] The state also contends that, even if the Appellate Court properly invalidated the no arrest condition, it should not have extended to the trial court the option of either rejecting the plea agreement or sentencing the defendant to the lesser three year sentence under the agreement. Instead, if this court determines that the condition is improper, the state contends that it should be afforded the choice to rescind the plea agreement or accede to the lesser sentence. We agree with the state that the no arrest condition was valid and that the trial court acted properly in imposing the seven year sentence.

"A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement." *State* v. *Wheatland*, 93 Conn. App. 232, 235 n.3, 888 A.2d 1098 (2006). "The validity of plea bargains depends on contract principles." *State* v. *Garvin*, supra, 242 Conn. 314. Thus, "[p]rinciples of contract law and special due pro-

---

[8] The state does not dispute the defendant's contention that she is entitled to review of her unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), but asserts that she cannot demonstrate under the third prong of *Golding* that the trial court's imposition of the seven year sentence clearly violated her right to due process. We agree with the defendant that she is entitled to review, but, for the reasons set forth later in this opinion, we agree with the state as to the merits of this issue.

cess concerns for fairness govern our interpretation of plea agreements." *Spence* v. *Superintendent*, 219 F.3d 162, 167–68 (2d Cir. 2000). When the contract language relied on by the trial court is definitive, the interpretation of the contract is a matter of law and our review is plenary. *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 227, 828 A.2d 64 (2003).

In *Garvin*, the trial court had warned the defendant at the time he entered his guilty pleas that it would not be bound by the agreed upon sentence if the defendant failed to appear for sentencing. *State* v. *Garvin*, supra, 242 Conn. 300. When the defendant failed to appear and subsequently was apprehended, the court refused to allow him to withdraw his pleas and imposed a sentence greater than what had been set forth in the plea agreement. Id., 300–301. Although the condition of the plea agreement in *Garvin* was that the defendant appear for sentencing, that case does not suggest that a failure to appear is the only condition that may be imposed on the agreement. Indeed, in *State* v. *Trotman*, 68 Conn. App. 437, 445, 791 A.2d 700 (2002), the Appellate Court, in reliance on *Garvin*, upheld the finding of the trial court that the defendant had breached her plea agreement when she produced urine samples that tested positive for opiates. Because the defendant had been warned clearly by the trial court and was aware of and understood her obligation not to produce positive urine samples, the trial court properly had imposed a sentence of incarceration instead of the agreed upon suspended sentence. Id. Similarly, in *State* v. *Small*, 78 Conn. App. 14, 22, 826 A.2d 211 (2003), the Appellate Court determined that the trial court properly had imposed as a condition of the defendant's *Garvin* agreement that he have no contact with the victims of his offenses when it warned him that if, based upon a finding of probable cause, he had violated that condi-

tion, it would sentence him to the longer term of incarceration attendant to a violation of the agreement.

In the present case, the state claims that the conditions that the defendant not be arrested while awaiting her sentencing and that she appear for that sentencing were an integral part of the plea agreement. We have examined the plea agreement by evaluating the court's explanation to the defendant of these conditions and conclude that both were part of the *Garvin* plea agreement between the parties.[9] The record clearly shows that, if the defendant had wanted to take advantage of the three year sentence upon her return to court, she would have had to have avoided any arrests for which probable cause could be determined. Her failure either to avoid such an arrest or to return for sentencing would expose her to a seven year term of incarceration. Rather than express any confusion about these conditions, the defendant acknowledged the requirements and accepted them. In light of the clear and unambiguous terms of the plea agreement, we conclude, on the basis of our plenary review of that agreement, that the defendant's arrest, supported by probable cause, violated one of the two conditions that singly would constitute a breach of that agreement.

The trial court's decision to enhance the defendant's sentence necessarily was predicated on two subsidiary determinations: that the agreement in fact was

---

[9] The following colloquy took place between the trial court and the defendant:

"The Court: Now when you come back [for sentencing], you're going to get three years in jail. If I want to give you more than three years, then you can take [your] plea back. However, if you don't show up on the day of sentencing or you pick up a new arrest and I read the police report and there's probable cause, then I can give you the full seven years and you cannot take your plea back. Do you understand that, ma'am?

"The Defendant: Yes, Your Honor.

"The Court: Do you agree with that?

"The Defendant: Yes."

breached and that the breached condition bore suffi-
cient indicia of reliability. The first consideration rests
on the notion that a defendant must not be sentenced on
the basis of "improper factors or erroneous information
. . . ." *State* v. *Patterson*, 236 Conn. 561, 565–66, 674
A.2d 416 (1996). The standard of review regarding this
inquiry is whether, on the basis of the evidence, the
trial court's finding of a breach of the agreement was
clearly erroneous. *State* v. *Trotman*, supra, 68 Conn.
App. 441. In the present case, the Appellate Court did
not conclude that the trial court improperly had found
that the condition had been violated, but, rather, that
the trial court improperly had found that the defendant's
violation of the no arrest condition of the agreement
was a proper consideration for enhancing her sentence.
According to the Appellate Court, because the no arrest
condition was not within the defendant's control, the
trial court had violated her due process rights by
enhancing her sentence based upon her failure to com-
ply with that condition. Although the Appellate Court
did not expressly label its consideration as reflecting on
reliability, by treating the incident of arrest as inherently
suspect as a factor, the court did in essence focus on
whether the information the trial court relied upon had
some minimum indicia of reliability in accordance with
our well settled case law. See *State* v. *Eric M.*, 271
Conn. 641, 650, 858 A.2d 767 (2004) ("It is a fundamental
sentencing principle that a sentencing judge may appro-
priately conduct an inquiry broad in scope, and largely
unlimited either as to the kind of information he may
consider or the source from which it may come. . . .
Nevertheless, [t]he trial court's discretion . . . is not
completely unfettered. As a matter of due process, infor-
mation may be considered as a basis for a sentence
only if it has some minimal indicium of reliability. . . .
As long as the sentencing judge has a reasonable, per-
suasive basis for relying on the information which he

uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." [Citations omitted; internal quotation marks omitted.]). In essence, the Appellate Court's determination that the condition did not bear that minimum indicia of reliability was founded upon its generalized concern that arrests are not based necessarily on the defendant's conduct such that they can, as a matter of law, be a reliable sentencing consideration. In that court's view, "being arrested, similar to being struck by lightning, can be the result of being in the wrong place at the wrong time." *State* v. *Stevens*, supra, 85 Conn. App. 478.

If that factor alone were sufficient to find a condition of a *Garvin* agreement invalid, however, other plea conditions that our courts have found to be proper also would be unreliable. For example, a defendant could fail to appear because he was in an accident, or a defendant inadvertently could have come into contact with the alleged victims from whom he had been warned to stay away at some neutral site. Thus, the mere fact that some circumstance could arise wherein the breach condition was established through no fault of the defendant does not render that condition unreliable as a matter of law. Indeed, the defendant concedes that, without a *Garvin* agreement, a presentence arrest is a legitimate basis for enhancing a sentence, but nonetheless claims that it is not a legitimate condition of a *Garvin* agreement. We cannot reconcile the notion, however, that a presentence arrest is sufficiently reliable for sentencing purposes absent a plea agreement, but not sufficiently reliable for imposing it as a binding condition of such an agreement.

We need not decide whether in every case the fact of an arrest is entitled to be met with a presumption of regularity. First, we note that, in this case, the trial court found probable cause to support the arrest, and we conclude as a matter of law that the facts upon which

the trial court relied supported that determination. The police report that the trial court considered indicates that, at the time of her arrest on possession of narcotics and marijuana charges; see footnote 4 of this opinion; the defendant was sitting at a kitchen table bagging crack cocaine, five bags of cocaine were on the table, and the defendant had a marijuana cigarette on her person. See *State* v. *Nesmith*, 220 Conn. 628, 634 n.9, 600 A.2d 780 (1991) (explaining that physical dominion or control, not ownership, required to support drug possession charge). Therefore, under the facts of this case, the information upon which the court relied was relevant and served as a reliable indicator for sentencing purposes.

Second, although we agree that due process requires that the defendant be given the opportunity to contest the evidence upon which the trial court relies for sentencing purposes; *State* v. *Huey*, 199 Conn. 121, 132, 505 A.2d 1242 (1986) (*Healey, J.*, concurring); Practice Book §§ 43-10 (1) and 43-16; the defendant in the present case does not dispute the fact of the arrest or the existence of probable cause for that arrest, nor does the record reflect that she challenged the veracity of the state's allegations regarding her criminal behavior.[10] Thus, in the absence of a dispute as to the validity of the arrest, giving effect to the breach of the no arrest condition does not violate due process. See *People* v. *Outley*, 80 N.Y.2d 702, 713, 610 N.E.2d 356, 594 N.Y.S.2d 683 (1993) ("If . . . proof that [the] defendant actually

---

[10] Indeed, the record reflects that, at the sentencing hearing, the defendant's only response to the trial court's inquiry as to whether she wanted to say anything was the following statement: "There ain't a problem with smoking and everything—incarcerated now upon my—it's clearing and I know all the mistakes that I made and I just need one more chance . . . ." Defense counsel argued to the trial court only that the defendant did not reside at the address where the drugs were seized; the trial court noted, however, that the bond sheet reflected that the defendant had given that address when she posted bond, a fact that defense counsel did not dispute.

committed the postplea offense which led to the arrest is not necessary, what lesser showing does due process require in order for the court to impose the enhanced sentence? Obviously, the mere fact of the arrest, without more, is not enough. A no-arrest condition could certainly not be held to have been breached by arrests which are malicious or merely baseless . . . . When an issue is raised concerning the validity of the postplea charge or there is a denial of any involvement in the underlying crime, the court must conduct an inquiry at which the defendant has an opportunity to show that the arrest is without foundation . . . . The nature and extent of the inquiry . . . is within the court's discretion . . . . The inquiry must be of sufficient depth, however, so that the court can be satisfied—not of [the] defendant's guilt of the new criminal charge but of the existence of a legitimate basis for the arrest on that charge." [Citations omitted.]). Under the facts of the present case, therefore, we conclude that the defendant's arrest, supported by probable cause, in violation of her *Garvin* agreement, was a proper basis for the enhanced sentence.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion SULLIVAN, C. J., and PALMER and VERTEFEUILLE, Js., concurred.

NORCOTT, J., concurring. I agree with the result reached by the majority in this case, but write separately because I disagree with much of the reasoning supporting the majority's conclusion that enforcement of the "no arrest" condition of the plea agreement in this case, pursuant to *State* v. *Garvin*, 242 Conn. 296, 699 A.2d

921 (1997) (*Garvin* agreement),[1] did not violate the due process rights of the defendant, Linda M. Stevens.[2] In my view, the Appellate Court properly concluded that proof of a subsequent arrest, even one supported by probable cause, is not by itself a constitutionally sufficient basis for increasing a defendant's sentence under the terms of a plea agreement. *State* v. *Stevens*, 85 Conn. App. 473, 477–78, 857 A.2d 972 (2004). I believe that the policy goals of the "no arrest" condition are better effectuated by encouraging our trial courts to impose *Garvin* agreement conditions prohibiting defendants from engaging in criminal conduct. The state would, however, be required to prove a defendant's breach of those conditions by the preponderance of the evidence, in accordance with a developing federal constitutional jurisprudence that is virtually ignored by the majority. A review of the record in the present case, however, demonstrates that, when given the opportunity to do so, the defendant did not dispute before the trial court that she had engaged in postplea criminal conduct. I, therefore, agree with the result reached by the majority.

I begin with a brief review of this court's decision in *State* v. *Garvin*, supra, 242 Conn. 296. In *Garvin*, the

[1] The Appellate Court has aptly described a *Garvin* agreement as "a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement. See *State* v. *Garvin*, supra, 242 Conn. 300–302." *State* v. *Wheatland*, 93 Conn. App. 232, 235 n.3, 888 A.2d 1098 (2006).

[2] At the outset, I note my agreement with the majority's assessment of the clarity of the terms of the plea agreement at issue in this case, and the fact that the defendant acknowledged and accepted these terms, including the "no arrest" condition. The crystal clarity of the *Garvin* agreement and the defendant's consent thereto are, however, irrelevant because enforcement of the "no arrest" condition is by itself a due process violation to which a defendant may not agree, even pursuant to a negotiated plea bargain. See, e.g., *Lee* v. *State*, 816 N.E.2d 35, 38 (Ind. 2004) (The court noted that "contract law principles although helpful are not necessarily determinative in cases involving plea agreements. For example we of course agree that 'we would not enforce a sentence of death for jay walking simply because the sentence was the product of a plea agreement.' ").

trial court had accepted the defendant's guilty pleas to numerous charges, but "[b]efore accepting the defendant's guilty pleas, the trial court informed him of its intent to impose a total sentence of fifteen years, execution suspended after eight years in prison, followed by three years probation. The court did not then have available a presentence investigation report to guide its final decision. . . . The court, therefore, also informed the defendant that it would not be bound by the proposed sentence, but that, if it imposed a greater sentence, the defendant could withdraw his pleas. The court also warned the defendant, however, that, if he failed to appear on the date set for his sentencing hearing, the court would not be bound by the sentence set forth in the plea agreement and the defendant would face additional charges of failure to appear." (Citation omitted.) Id., 300. After the defendant failed to appear for his sentencing hearing, the "trial court noted [his] absence and informed his counsel that the court was no longer bound by the plea agreement and that the defendant would not be allowed to withdraw his pleas. The court also ordered forfeiture of both bonds and issued two bench warrants for the defendant's arrest." Id., 300–301. Thereafter, the defendant was apprehended and the trial court denied his motion to withdraw his guilty pleas, and imposed a "total sentence of eighteen years, execution suspended after twelve years in prison, followed by three years probation, on the conspiracy to commit robbery in the first degree, sexual assault and risk of injury counts together." Id., 301.

On appeal, the defendant contended, inter alia, "that the plea agreement violated his right to due process because, if he did not have the right to withdraw his pleas after he failed to appear for sentencing, the plea agreement constituted an illusory contract." Id., 313. Noting that "[t]he validity of plea bargains depends on contract principles," we concluded that, "[u]nder the

terms of the defendant's plea agreement, in return for his guilty pleas, he received consideration in the form of the agreed upon sentence. One of the conditions of the agreement, however, was that the defendant appear for sentencing. *Fulfillment of this condition was within the defendant's control.* He understood at the outset that, if he failed to satisfy this condition, he nonetheless would be bound to the agreement. By holding the defendant to his guilty pleas, while imposing sentences reflecting his failure to appear, the trial court did no more than enforce the terms of the plea agreement. Accordingly, the defendant's plea bargain did not violate due process . . . ." (Emphasis added.) Id., 314.

A defendant who has pleaded guilty under the terms of a *Garvin* agreement is, in essence, serving a form of probation as he stands to receive the benefits of the plea bargain only if he abides by the conditions that it imposes. See *Torres* v. *Berbary*, 340 F.3d 63, 69 (2d Cir. 2003) ("[t]he determination to resentence for the breach of a condition of a sentence is . . . analogous to the determination to impose a sentence for violation of the terms of probation"). Additionally, the terms of a *Garvin* agreement frequently bear more than a faint resemblance to the terms imposed in accordance with probation. See *State* v. *Small*, 78 Conn. App. 14, 17–18, 826 A.2d 211 (2003) (defendant prohibited from, inter alia, contact with alleged victims; compliance would result in sentence of two years and six months and violation would result in sentence of four years and eleven months); *State* v. *Lopez*, 77 Conn. App. 67, 70–71, 822 A.2d 948 (2003) (state would nolle charges if defendant abated numerous fire and health code violations and made charitable contribution by specified date; failure to abide by agreement would result in imprisonment and probation), aff'd, 269 Conn. 799, 850 A.2d 143 (2004); *State* v. *Trotman*, 68 Conn. App. 437, 440, 791

A.2d 700 (2002) (defendant had to submit to drug treatment and monthly drug testing while sentencing was continued, with "defendant's failure to remain in the program, a new arrest or a urine test indicating drug use [resulting] in a sentence of four years without the right to argue for a lesser sentence").[3] Thus, I would afford a defendant accused of violating the terms of a *Garvin* agreement the same procedural safeguards provided for individuals accused of violating the terms of their probation.

In the closely analogous probation context, merely being arrested is insufficient to constitute a violation; rather, the state must prove by a preponderance of the evidence that the probationer violated the terms of his or her probation by, for example, violating a criminal statute.[4] See, e.g., *State* v. *Faraday*, 268 Conn. 174, 183–84, 842 A.2d 567 (2004). I would, therefore, require the state to prove by a preponderance of the evidence that the defendant subject to a "no arrest" condition pursu-

[3] The *Garvin* agreements in *State* v. *Lopez*, supra, 77 Conn. App. 70–71, and *State* v. *Trotman*, supra, 68 Conn. App. 440, are particularly analogous to probation, which is "first and foremost, a penal alternative to incarceration . . . . [Its] purpose . . . is to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable. . . . [P]robationers . . . do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 180, 842 A.2d 567 (2004).

[4] The trial court's factual finding as to whether a probationer has violated a condition of his probation is reviewed on appeal for clear error. *State* v. *Faraday*, 268 Conn. 174, 185, 842 A.2d 567 (2004.) I also note that after a trial court has determined that the probationer has violated a condition of his or her probation, that "court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Internal quotation marks omitted.) Id. If the trial court makes this determination and reinstates the original sentence and orders incarceration, that determination is reviewed for abuse of discretion. Id., 185–86.

ant to a *Garvin* agreement engaged in criminal conduct that resulted in his arrest, rather than merely that the arrest was supported by probable cause. The use of a lesser standard of proof undermines the principle that "[d]ue process requires the government to prove a breach of a plea agreement by a preponderance of the evidence."[5] *Spence* v. *Superintendent*, 219 F.3d 162, 168–69 (2d Cir. 2000) (citing cases from nine federal circuits), overruled in part on other grounds, *Dretke* v. *Haley*, 541 U.S. 386, 393–94, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004) ("a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default"). More specifically, with respect to "no arrest" conditions such as that imposed by the trial court in the present case, the fact of the arrest is impossible to contest seriously, and requiring the state merely to show probable cause for the arrest puts that defendant at a serious disadvantage compared to individuals accused of violating other *Garvin* agreement conditions, such as drug treatment or curing code violations. It is axiomatic that proof by the preponderance of the evidence is, although far less than proof beyond a reasonable doubt, a quantum greater than a showing of probable cause. See, e.g., *State* v. *James*, 261 Conn. 395, 415–16, 802 A.2d 820 (2002) ("The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . *[P]roof of probable cause requires less than proof by a preponderance of the evidence.* . . . Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has

---

[5] I note that we review the trial court's finding of a breach of a plea agreement for clear error. *State* v. *Trotman*, supra, 68 Conn. App. 441.

occurred. . . . The probable cause determination is, simply, an analysis of *probabilities*." [Emphasis added; internal quotation marks omitted.]); see also *State* v. *Munoz*, 233 Conn. 106, 136, 659 A.2d 683 (1995) ("[t]he court's finding by a preponderance of the evidence, therefore, necessarily also encompassed a finding by the less demanding standard of probable cause"); cf. *Spence* v. *Superintendent*, supra, 172 n.1 (illustrating conceptual distinction between "no arrest" and "no misconduct" conditions and noting that conclusion that defendant was actually innocent of charges from second arrest "does not conflict with the trial court's conclusion that a minimal 'legitimate basis' for [the defendant's] rearrest was shown in the post-plea hearing").

I further disagree with the majority's position that a showing of probable cause for the arrest is constitutionally sufficient because, as the defendant concedes, a sentencing court properly may consider a presentence arrest as a factor for enhancing a defendant's sentence. Unlike the majority, however, I see nothing inconsistent with the defendant's position that the presentence arrest is "not sufficiently reliable for imposing it as a binding condition of such [a plea] agreement." Citing *State* v. *Eric M.*, 271 Conn. 641, 649–51, 858 A.2d 767 (2004) (defendant's comments in newspaper article), and *State* v. *Patterson*, 236 Conn. 561, 576, 674 A.2d 416 (1996) (lack of presentence investigation report), the majority states that a presentence arrest is an enhancement factor that has the "minimum indicia of reliability" required by "our well settled case law."[6]

---

[6] In *State* v. *Eric M.*, supra, 271 Conn. 641, we reviewed the numerous principles that govern the sentencing process. "A sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial. . . . To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt . . . [and] evidence of crimes for which the defendant was indicted but neither tried nor convicted . . . . Generally, due process

Those cases are, however, inapposite because they involved defendants who had been sentenced after trial, and the majority's reliance on them results in it discounting the main reason that a defendant enters into a plea agreement, namely, his or her bargained for reliance on a reduced sentence in exchange for a guilty plea. See, e.g., *State* v. *Niblack*, 220 Conn. 270, 283, 596 A.2d 407 (1991) ("When a guilty plea is induced by promises arising out of a plea bargaining agreement, fairness requires that such promises be fulfilled by the state. . . . The same concept of fairness ordinarily impels the court, in its discretion, either to accord spe-

does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . . Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance. . . . It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. . . .

"Nevertheless, [t]he trial court's discretion . . . is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. . . . As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion. . . .

"To hold otherwise would be to adopt an unrealistic view of both the plea bargaining and sentencing processes, a view that would only deter judges from articulating their reasons for a particular sentence fully and prevent correction when the sentencing judge relied on information which was truly unreliable, inaccurate or patently wrong. Trial judges ought not be reprimanded for acknowledging on the record the impact of information they have gained in the plea bargaining or sentencing processes unless the use of such information confounds reason and a just result. . . . Accordingly, when cases of this nature are heard on appeal, we should review the record to ensure that there is a persuasive basis for the conclusion reached by the sentencing court. . . . There is no simple formula for determining what information considered by a sentencing judge is sufficiently reliable to meet the requirements of due process. The question must be answered on a case by case basis." (Citations omitted; internal quotation marks omitted.) Id., 649–51.

cific performance of the agreement or to permit the opportunity to withdraw the guilty plea." [Internal quotation marks omitted.]). Put differently, a defendant who must comply with the terms of a *Garvin* agreement or face enhanced deprivation of liberty is different from a defendant who, by proceeding to trial, no longer has any assurances or expectations as to the specific outcome or consequences of his case.[7]

Moreover, the higher standard of proof, namely, preponderance of the evidence, would mitigate the Appellate Court's well founded concerns that "[w]e do not accept . . . that a person necessarily has control over whether he or she is arrested. We recognize that being arrested, similar to being struck by lightning, can be the result of being in the wrong place at the wrong time." *State* v. *Stevens*, supra, 85 Conn. App. 478. The undeniable reality is that, like the defendant in the present case, many criminal defendants reside in disadvantaged urban environments and are not strangers to a heightened police presence. Thus, to take the Appellate Court's lightning analogy one step further, many defendants are released pursuant to *Garvin* agreements into situations that are akin to walking on an open field with a metal tipped umbrella in a thunderstorm.[8] These

[7] I, of course, do not suggest that a defendant may purposefully be subjected to a greater sentence as a consequence of having exercised his right to a trial. See *State* v. *Revelo*, 256 Conn. 494, 514, 775 A.2d 260 ("[T]he trial court imposed a more severe sentence on the defendant solely because he asserted his right to a judicial ruling on his motion to suppress. In doing so, the trial court unfairly punished the defendant for exercising that right in violation of the federal due process clause."), cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001).

[8] I disagree with the majority's position that, if not getting arrested is beyond the defendant's control, then "other plea conditions that our courts have found to be proper also would be unreliable. For example, a defendant could fail to appear because he was in an accident, or a defendant inadvertently could come into contact with the alleged victims from whom he had been warned to stay away at some neutral site. Thus, the mere fact that some circumstance could arise wherein the breach condition was established through no fault of the defendant does not render that condition unreliable as a matter of law." In my view, this position is too sweeping,

defendants simply are more likely to be in the wrong place at the wrong time, a risk that is mitigated by requiring the state to prove subsequent criminal conduct, rather than the fact of a mere arrest, by a preponderance of the evidence before they suffer adverse consequences under a *Garvin* agreement.

Finally, a review of the federal and state case law that has developed in the context of "no arrest" and other plea conditions enforced in New York pursuant to *People* v. *Outley*, 80 N.Y.2d 702, 610 N.E.2d 356, 594 N.Y.S.2d 683 (1993),[9] leaves me firmly convinced that the majority's enforcement of "no arrest" conditions violates due process principles.[10] I begin by noting that, in *Outley*, the New York Court of Appeals explicitly rejected the defendant's argument that, "when a defendant denies the postplea criminal conduct, the court must conduct an evidentiary hearing to satisfy itself by a preponderance of the evidence that the defendant has, in fact, committed the crime for which he was arrested," concluding instead that, "[i]mposing such a requirement would have the effect of changing the condition of the plea bargain from *not being arrested for*

and raises factual scenarios that are not presently before this court. If a defendant failed to appear because he was, for example, injured in an accident en route to the courthouse, and was then deprived of the benefit of his *Garvin* agreement, that defendant would appear to me to have a very sound due process claim.

[9] Indeed, I note that the majority cites *People* v. *Outley*, supra, 80 N.Y.2d 702, for the proposition that, "in the absence of a dispute as to the validity of the arrest, giving effect to the breach of the no arrest condition does not violate due process."

[10] Sister state case law with respect to the due process implications of "no arrest" conditions is scarce, but I note that Florida enforces "no offense" conditions pursuant to its leading conditional plea agreement case, *Quarterman* v. *State*, 527 So. 2d 1380, 1382 (Fla. 1988), which, like *State* v. *Garvin*, supra, 242 Conn. 313–14, involved a defendant's failure to appear. Florida's intermediate appellate court has upheld a maximum sentence imposed as a violation of a "no offense" provision of a conditional plea agreement, noting that the trial court had held a "full hearing" prior to increasing the defendant's sentence. *Bennett* v. *State*, 858 So. 2d 1251, 1252 (Fla. App. 2003).

*a crime to not actually committing a crime.*" (Emphasis in original.) Id., 712–13. That court did, however, conclude that due process precludes imposition of an enhanced sentence based on "the mere fact of the arrest, without more," and that "[w]hen an issue is raised concerning the validity of the postplea charge or there is a denial of any involvement in the underlying crime, the court must conduct an inquiry at which the defendant has an opportunity to show that the arrest is without foundation . . . . The inquiry must be of sufficient depth, however, so that the court can be satisfied—not of [the] defendant's guilt of the new criminal charge but of the existence of a legitimate basis for the arrest on that charge." (Citations omitted.) Id., 713.

A recent decision of the United States Court of Appeals for the Second Circuit, *Torres* v. *Berbary*, supra, 340 F.3d 63, casts significant constitutional doubt on the enforcement of "no arrest" conditions such as those approved by the majority and the New York Court of Appeals in *Outley*, which do not require the state to prove misconduct by the defendant by a preponderance of the evidence.[11] In *Torres*, the petitioner had pleaded

---

[11] Indeed, even before *Torres*, a New York federal District Court had questioned the constitutionality of increasing a sentence as a result of the violation of a "no arrest" condition pursuant to *People* v. *Outley*, supra, 80 N.Y.2d 712–13, without also requiring the state to prove, at least by the preponderance of the evidence, that the defendant actually engaged in criminal conduct. See *Spence* v. *Superintendent*, 987 F. Sup. 151, 164 (E.D.N.Y. 1997) (finding "considerable appeal" in petitioner's argument that, "for due process to be served, the breach of a no-arrest condition must be supported by a judicial finding by at least a preponderance of the evidence that [the] defendant committed the crime for which he was arrested"), rev'd on other grounds, 219 F.3d 162 (2d Cir. 2000), overruled in part on other grounds, *Dretke* v. *Haley*, 541 U.S. 386, 393–94, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004); see also *Spence* v. *Superintendent*, supra, 164 (noting advantages of preponderance of evidence inquiry as compared to "fluid" probable cause standard). Ultimately, however, the District Court concluded that it could not grant the petitioner habeas corpus relief because application of the preponderance of the evidence standard, rather than probable cause, would constitute a "new rule" that could not be applied on collateral review pursuant to *Teague* v. *Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). *Spence* v. *Superintendent*, supra, 165–68.

guilty in New York state court to narcotics charges; the state trial court then conditionally sentenced the defendant by releasing him to a drug treatment facility. Id., 64. With successful treatment, the defendant would have been permitted to return to court to replead to a misdemeanor; the defendant would, however, be incarcerated on the original felony charge if he engaged in any misconduct at the facility. Id., 64–65. Thereafter, the drug treatment facility discharged the petitioner, and sent a letter to the court explaining that he was being discharged because new residents had overheard conversations conducted in Spanish in which the petitioner had claimed to be able to sell drugs, that he had obtained through church trips, in the facility. Id., 65. The petitioner then returned to state court and denied the allegations, and requested another opportunity to complete a drug treatment program. Id., 65–66. The state trial court refused this request because the drug treatment facility "generally gives me accurate reports," and rejected the petitioner's unsworn explanation that he merely had associated with the wrong people. Id., 66. The state appellate division affirmed, and the federal District Court denied the petitioner's application for a writ of habeas corpus. Id., 66–67.

On appeal, however, the Second Circuit Court of Appeals expressly declined to decide the issue of whether a showing that a postplea arrest has a " 'legitimate basis' as required by *Outley* accords a defendant sufficient due process." *Spence* v. *Superintendent*, supra, 219 F.3d 168. Instead, it concluded that the plea agreement at issue in the case was ambiguous, and the condition was a "no misconduct" condition, rather than a "no arrest" condition. Id., 169. Accordingly, the Court of Appeals concluded that the state proceedings were flawed by the state courts' failure to consider whether the state had proven misconduct, rather than a "legitimate basis" for the arrest. Id., 168–69. The Second Circuit also concluded that the defendant's claims were not barred by procedural default because he had proven his actual innocence of the robbery forming the basis for his rearrest by clear and convincing evidence, namely, five reputable alibi witnesses and the fact that one of the victims subsequently had difficulty identifying him. Id., 171–72. Accordingly, because the petitioner had served eight years in prison, the court reversed the judgment of the habeas court and ordered the petitioner released. Id., 175.

On appeal, the Second Circuit reversed the federal District Court, concluding that the state courts had unreasonably applied "clearly established" federal law with respect to the due process protections afforded in the sentencing context. Id., 68–69. The Court of Appeals concluded that, "[t]he Supreme Court has clearly spoken on the question of the standard of proof of facts in sentencing in relation to the constitutional requirement of due process, holding that the preponderance of [the] evidence standard satisfied the requirement." Id., 69, citing *McMillan* v. *Pennsylvania*, 477 U.S. 79, 91, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986). The Second Circuit further stated that, "[t]he determination to resentence for the breach of a condition of a sentence is analogous to the determination to revoke the parole of a parolee for failure to comply with the conditions of parole. *It is also analogous to the determination to impose a sentence for violation of the terms of probation.* All these determinations should be informed by the same considerations. For parole revocation, an opportunity for a hearing must be provided." (Emphasis added.) *Torres* v. *Berbary*, supra, 340 F.3d 69. The court then noted that, "although due process considerations are implicated in sentencing generally, not all the evidentiary limitations and procedural safeguards are required in the conduct of a sentencing proceeding." Id., 70. Nevertheless, it concluded that the state court's reliance on the letter from the drug treatment facility in resentencing the petitioner to incarceration was a due process violation because that letter was composed entirely of double and hearsay statements that could not have satisfied the "required preponderance of [the] evidence standard in sentencing" because, "[a]s has been demonstrated, due process in sentencing requires at least a showing by a preponderance of the evidence to resolve disputed factual issues." Id., 70–71. Accordingly, the court determined that the petitioner's due process

rights had been violated, and ordered the issuance of a writ of habeas corpus.[12] Id., 72.

In my view, the Second Circuit's decision in *Torres* ineluctably leads to the conclusion that the criminal conduct alleged to have caused the breach of a "no arrest" condition must be proven by the preponderance of the evidence.[13] The state courts cannot make an end

[12] I note that the federal District Courts have, while criticizing the underpinnings and effect of the Second Circuit's decision in *Torres*, nevertheless identified its import and applicability in this context of "no arrest" conditions. See *Coleman* v. *Rick*, 281 F. Sup. 2d 549, 560 (E.D.N.Y. 2003) (criticizing *Torres* as "undesirable and indefensible" in light of Supreme Court cases and habeas corpus restrictions provided by Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 [d]). In *Coleman*, the petitioner had entered into a "no misconduct" sentencing agreement, but was arrested shortly thereafter for menacing, robbery and harassment. Id., 553. The court denied the petition for habeas corpus, apparently considering the "no misconduct" agreement to be a "no arrest" agreement, and concluding, inter alia, that the petitioner's due process rights had not been violated because the state trial court had conducted a hearing pursuant to *People* v. *Outley*, supra, 80 N.Y.2d 712–13, at which the petitioner could speak, and the indictment on the second charges was a constitutionally sufficient "legitimate basis" for those charges. *Coleman* v. *Rick*, supra, 559. The District Court concluded that, with respect to any doubt created by the preponderance of the evidence standard required by *Torres* v. *Berbary*, supra, 340 F.3d 69–70, the subsequent indictment of the petitioner would satisfy that standard, and that, in any event, the petitioner had subsequently pleaded guilty to the new robbery charges that had led to the sentence enhancement. *Coleman* v. *Rick*, supra, 560–61. The court did, however, grant a certificate of appealability because the "shadow of *Torres*" rendered the case "now a close question," and that decision had left the District Courts in a state of "disquietude." Id., 561; see also *Janick* v. *Superintendent*, 404 F. Sup. 2d 472, 486 (W.D.N.Y. 2005) (noting that "the issue that remains is whether the *Outley* 'legitimate basis' standard is adequate to satisfy due process requirements at sentencing, or whether a 'preponderance' standard is constitutionally required," but concluding in "no arrest" case that fingerprint evidence in case satisfied higher standard under *Torres*).

[13] Indeed, I further note that several reported New York state court decisions have identified this issue, but have yet to decide it because of the records in those specific cases. See *People* v. *Valencia*, 3 N.Y.3d 714, 715, 819 N.E.2d 990, 786 N.Y.S.2d 374 (2004) (identifying *Torres* issue in case wherein defendant failed to complete drug treatment, but declining to decide issue because defendant did "not dispute that he committed acts that constituted violations of the plea agreement"); see also *People* v. *Ricketts*, 27

run around the constitutional preponderance of the evidence requirement in *Torres* by imposing "no arrest" conditions that may be satisfied merely by proving the much lower quantum of probable cause for the arrest. *State* v. *Munoz*, supra, 233 Conn. 136. Instead, courts should achieve the essential purpose of the "no arrest" condition, namely, discouraging defendants from getting themselves into further legal trouble, by imposing *Garvin* agreement conditions that prohibit postplea defendants from engaging in conduct that violates criminal statutes. Indeed, a "no misconduct" condition shifts the focus toward the defendant's compliance with the law, unlike a "no arrest" condition, which is keyed entirely on whether the defendant gets caught, regardless of whether he or she actually committed the acts leading to the new arrest.

The present case, at first glance, presents the issue identified by the New York federal and state courts in the wake of *Torres* v. *Berbary*, supra, 340 F.3d 63. See footnotes 12 and 13 of this concurring opinion. Here, there clearly existed probable cause for the defendant's arrest,[14] and it appears that she did not receive a hearing

App. Div. 3d 488, 811 N.Y.S.2d 103 (2006) (indictment following arrest that breached "no arrest" condition satisfied due process standards; court did not reach implications of indictment dismissal under *Torres* because record was inadequate); *People* v. *Clark*, 16 App. Div. 3d 113, 114, 790 N.Y.S.2d 114 (trial court was "not obligated to conduct an evidentiary hearing or make a finding by a preponderance of the evidence" because defendant did not dispute validity of one of his arrests that constituted breach of "no arrest" condition), appeal denied, 5 N.Y.3d 760, 834 N.E.2d 1265, 801 N.Y.S.2d 255 (2005); *People* v. *Bennett*, 4 Misc. 3d 287, 292–93, 777 N.Y.S.2d 285 (2004) (acknowledging confusion created by *Torres* with respect to enforcement of "no arrest" conditions, concluding that indictment on charges from rearrest satisfied preponderance of evidence standard, and permitting defendant to offer "sworn allegations of fact and any other competent evidence to support his position that his arrest was baseless" prior to resentencing).

[14] I agree with the majority's conclusion that the police report from the defendant's subsequent arrest clearly establishes probable cause for her arrest, namely, that in the course of executing a search warrant, the police allegedly witnessed the defendant sitting at the kitchen table bagging crack cocaine for sale.

consistent with minimal due process requirements before the trial court resentenced her as a consequence of violating the *Garvin* agreement because the police report was not made an exhibit, no witnesses testified under oath either for the state or the defendant, and the defendant's statements to the court were unsworn. I am, however, constrained to affirm the judgment of the trial court because the record reveals that the defendant never contested the factual basis for her subsequent arrest, instead choosing to ask the trial court for "one more chance." See *People* v. *Clark*, 16 App. Div. 3d 113, 114, 790 N.Y.S.2d 114, appeal denied, 5 N.Y.3d 760, 834 N.E.2d 1265, 801 N.Y.S.2d 255 (2005). Moreover, it appears that the state would have had no difficulty whatsoever satisfying the higher preponderance of the evidence standard had it simply, for example, called the arresting officer to testify. Accordingly, I agree with the result of the majority opinion reversing the judgment of the Appellate Court.

---

* The listing of justices reflects their seniority status on this court as of the date of argument.