STATE OF CONNECTICUT *v.* PAIGE WHEATLAND
(AC 25947)

Lavery, C. J., and Dranginis and McLachlan, Js.

---

Argued December 6, 2005—officially released January 17, 2006

*Mark Diamond,* special public defender, for the appellant (defendant).

*Joan K. Willin,* special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *Robert J. O'Brien,* supervisory assistant state's attorney, and *Eugene R. Calistro, Jr.,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Paige Wheatland, appeals from the judgment of the trial court rendered following the denial of his motion to withdraw his guilty plea, entered pursuant to the doctrine of *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970),[1] to one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (3). On appeal, the defendant claims that (1) the plea was not knowingly and voluntarily made, (2) the court abused its discretion in denying his motion to withdraw the plea and (3) his sentence is illegal. We affirm the judgment of the trial court.

The relevant facts are as follows. The defendant was arrested and charged with assault in the first degree following an altercation that transpired in Meriden on July 14, 2000.[2] On April 5, 2001, the defendant entered

---

[1] "Under *North Carolina* v. *Alford,* [supra, 400 U.S. 25], a criminal defendant is not required to admit his guilt, but consents to being punished *as if he were guilty* to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Emphasis in original; internal quotation marks omitted.) *State* v. *Faraday,* 268 Conn. 174, 204–205, 842 A.2d 567 (2004).

[2] At the plea hearing, the prosecutor stated the following factual basis of the plea: "[On] July 14, 2000, in the area of 22 Hickory Street, first floor, in the city of Meriden at approximately 8:45 in the evening, Meriden police responded to that address as indicated on the report of an assault. Upon arrival, one person was injured [and was] transported to the hospital. It was the victim, Mr. Wyanti Leary. Detectives spoke to the homeowner, Miss Melody Melton, who also signed the consent to search [form], allowing the detectives to photograph the apartment, which contained blood on a towel

a guilty plea pursuant to an agreement under *State* v. *Garvin*, 242 Conn. 296, 699 A.2d 921 (1997).[3] Significantly, the agreement provided that if the defendant failed to appear for sentencing, the court could impose a sentence of up to twenty years. The court canvassed the defendant to ensure that his decision to plead guilty was knowing and voluntary, and then deferred acceptance of the plea pursuant to Practice Book § 39-7. The matter was continued for sentencing on July 13, 2001. On that date, the defendant did not appear. Consequently, the court accepted the defendant's guilty plea, forfeited his bond and ordered his rearrest. Sometime in 2002, the defendant was arrested out of state and convicted on federal drug possession charges. He later was extradited to Connecticut and, on October 23, 2003, entered a plea of not guilty to a charge of failure to appear for sentencing. The defendant thereafter filed a motion to withdraw his April 5, 2001 plea, which the court denied. The court sentenced the defendant to a term of fifteen years imprisonment, and this appeal followed.

I

The defendant first contends that the April 5, 2001 plea was not knowingly and voluntarily made. We disagree.

on the floor in the living room and a trail of blood that led from the living room to the kitchen into the bathroom and a rear bedroom. A partial footprint was in blood in the hallway. One LaTarra Heminway gave a statement to the police that she observed [the defendant] break the glass to the residence, enter the house by unlocking the door through broken glass, had exchanged—there was a verbal confrontation between the victim and [the defendant] where [the defendant] pulled out a knife, swung it at the victim, cutting him on the head, which resulted in a two and one-half inch scar on him. The defendant then left the area. Statements were made. Positive identification was made by at least three different people that [the defendant] had—was involved in that physical altercation with the knife."

[3] A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement. See *State* v. *Garvin*, supra, 242 Conn. 300–302.

"The United States Supreme Court has held that for the acceptance of a guilty plea to comport with due process, the plea must be voluntarily and knowingly entered. *Boykin* v. *Alabama*, 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). *Boykin* set forth three federal constitutional rights of which a defendant must be cognizant prior to entering a guilty plea: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's own accusers." *State* v. *Carter*, 243 Conn. 392, 397, 703 A.2d 763 (1997). "*Boykin* requires the court to address the defendant concerning only [those] core constitutional rights." *State* v. *Higgins*, 88 Conn. App. 302, 307, 869 A.2d 700, cert. denied, 274 Conn. 913, 879 A.2d 893 (2005). "[T]he federal constitution . . . does not require that the trial court go beyond these constitutional minima." (Internal quotation marks omitted.) Id. We conduct a plenary review of the circumstances surrounding the plea to determine if it was knowing and voluntary. *State* v. *Groppi*, 81 Conn. App. 310, 313, 840 A.2d 42, cert. denied, 268 Conn. 916, 847 A.2d 311 (2004).

The following additional facts are uncontested and relevant to our inquiry. At the April 5, 2001 plea hearing, the court canvassed the defendant. The court inquired as to whether the defendant had had enough time to discuss the matter with his attorney and whether he was satisfied with his attorney's advice and counsel, to which the defendant answered affirmatively. The court asked whether the defendant was under the influence of drugs, alcohol, medication or any other substance; the defendant replied no. The court then asked whether the defendant understood that "by pleading to the charge, even under the *Alford* doctrine, you are giving up your right to try the case to the court or the jury with the assistance of your attorney, you are giving up your right to confront and cross-examine witnesses against you, your right against self-incrimination, your

right to put on evidence in your own behalf and your right to continue to plead not guilty? Do you understand you are giving up those trial rights?" The defendant again answered affirmatively. The court asked whether the defendant was "pleading voluntarily and of your own free will"; the defendant answered "yes." Asked whether anyone had forced or threatened him in any respect to enter the plea, the defendant answered, "No, sir." The court further inquired whether the defendant had had "a chance to discuss with your attorney the elements of the offense and the evidence the state claims to have in connection with the elements," and the defendant replied affirmatively. The court also inquired whether the defendant understood that "the maximum penalty you could get for the . . . charge [of assault in the first degree] is from one to twenty years [incarceration] and [a fine of] up to $15,000 so that the maximum is twenty years and $15,000." The defendant answered "yes."

The court then addressed the terms of the *Garvin* agreement, explaining that the defendant was facing either "a ten after five with five years probation or five years to serve followed by six years special parole . . . ." The court continued: "Additionally, you have to understand that as part of this agreement, you must be present in court on the acceptance and sentencing date agreed upon by the parties. If you are not present, then all deals are off. That is, the court would be free to accept your plea previously tendered and sentence you to any sentence within the maximum allowed with respect to the charges if you fail to appear. . . . Do you understand that?" "Yes, sir," the defendant replied. The court therefore concluded that the "plea is found to be voluntarily made and understandingly made with the assistance of competent counsel."

## A

In support of his claim, the defendant first refers to the portion of the plea canvass in which he indicated

that he did not understand the concept of special parole. At the outset of the canvass, the following colloquy occurred:

"The Court: Have you had enough time to discuss this matter with your attorney?

"[The Defendant]: Actually, no, sir.

"The Court: All right. Now, I know this has been pending for quite a while, and I know the offers were made some time ago and continued to this date for a yes or no response. Now, what is it that you haven't done in connection with this case that you require to do?

"[The Defendant]: Well, actually I—

"The Court: When you say you haven't had enough time.

"[The Defendant]: I just want to know—I don't know the difference between what he's saying, six special years of parole or—

"The Court: Let me explain what special parole is, basically. First of all, there's five years incarceration. You'd serve whatever you serve of that time of a five year sentence. Then, instead of probation, you are on parole. There are conditions to be—just like after a prison sentence when you are put on parole. There's a parole board. There are conditions to parole, which are similar to that of probation. As you serve—let's say you have six years of special parole. As you serve each year, a year disappears. In other words, once you've gone through one year without a problem, then you have five years left. If you go through two, you have four years left hanging over your head and so on. If you go through five years of the six years of special parole you only— if you are violated, you only have one year to serve, but whatever the remainder is, if you do violate, there's

no violation of probation hearing. There's a parole hearing and you are put back in custody.

"[The Defendant]: So, for the whole six years I have to report to a—

"The Court: You'd have to report to parole rather than probation is basically what happens.

"[The Defendant]: And with the other way I would just—

"The Court: The other way is probation and it doesn't—you know, probation. The time hanging over your head doesn't diminish during the period that you serve the probation, but its something—if you are going to be on special parole, it's a good idea not to get in any trouble because there's no violation of probation hearing. There's a special—there's a parole hearing, which [has] a lot fewer rights involved.

"[Defense Counsel]: I will review the statutes with him and the differences again, Your Honor, between now and the date of sentencing.

"The Court: Okay, and I think that would be appropriate if he's going to make that determination. Now, other than that, are you prepared to continue with the canvassing?

"[The Defendant]: Yes, sir."

The defendant claims that this colloquy demonstrates that he "did not understand the nature of the plea proceedings or the proposed sentence." The defendant does not identify any specific rule of practice or decisional law in support of that contention. The salient provisions of our rules of practice are contained in Practice Book §§ 39-19 and 39-20. Section 39-19 (1) requires that a defendant understand the "nature of the charge to which the plea is offered . . . ." Special parole, however, pertains to the nature of the defen-

dant's *sentence* and has little bearing on the nature of the charge, in this case assault in the first degree. Practice Book § 39-19 (2), (3) and (4) concern sentencing. They require a defendant to understand the mandatory minimum sentence, whether the statute for the particular offense does not permit the sentence to be suspended and "[t]he maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction . . . ." Practice Book § 39-19 (4). "Our Supreme Court has . . . declined to extend the requirements of a plea canvass beyond those set forth in Practice Book §§ 39-19 through 39-21." *Ramos* v. *Commissioner of Correction*, 67 Conn. App. 654, 661, 789 A.2d 502, cert. denied, 260 Conn. 912, 796 A.2d 558 (2002). In addition, Connecticut law instructs that a defendant may voluntarily and understandingly waive the core constitutional rights identified in *Boykin* "without literal compliance with the prophylactic safeguards of Practice Book [§§ 39-19 and 39-20]. Therefore . . . precise compliance with the provisions [of the Practice Book] is not constitutionally required." (Internal quotation marks omitted.) *State* v. *Higgins*, supra, 88 Conn. App. 308.

The record reveals that the court asked the defendant if he understood that "the maximum penalty you could get for the . . . charge [of assault in the first degree] is from one to twenty years [incarceration] and [a fine of] up to $15,000 so that the maximum is twenty years and $15,000," to which the defendant replied affirmatively. The court then asked the defendant if he understood the terms of the *Garvin* agreement, which promised "[e]ither one or the other of two possible sentences. Either a ten after five with five years probation or five years to serve followed by six years special

parole . . . ." The defendant indicated that he understood those terms. Finally, the court informed the defendant that "[a]dditionally, you have to understand that as part of this agreement, you must be present in court on the acceptance and sentencing date agreed upon by the parties. If you are not present, then all deals are off. That is, the court would be free to accept your plea previously tendered and sentence you to any sentence within the maximum allowed with respect to the charges if you fail to appear. . . . Do you understand that?" Again, the defendant answered affirmatively. In light of the foregoing, we conclude that the defendant understood the nature of the proposed sentence.

Finally, even if we assume arguendo that the defendant remained confused as to the concept of special parole following the court's canvass, that fact does not render his plea unknowing and involuntary. "To prevail, the defendant must establish that the court failed to obtain a proper waiver of at least one of the three core constitutional rights identified in *Boykin* . . . ." *State v. Lugo*, 61 Conn. App. 855, 863, 767 A.2d 1250, cert. denied, 255 Conn. 955, 772 A.2d 153 (2001). It is undisputed that the defendant was cognizant of his privilege against compulsory self-incrimination, his right to trial by jury and his right to confront his accusers. Indeed, the defendant does not contest that he knowingly and voluntarily waived those three core constitutional rights. Accordingly, the court properly concluded that the defendant's plea was knowing and voluntary.

B

The defendant also argues that the court failed to apprise him of the mandatory minimum sentence as required by Practice Book § 39-19 (2). His claim merits little discussion. "[T]he constitutional mandate is not strict adherence to [Practice Book § 39-19 (2)] but, rather, an understanding by the defendant of the actual

sentencing possibilities." (Internal quotation marks omitted.) *State* v. *Domian*, 235 Conn. 679, 689, 668 A.2d 1333 (1996). During the canvass, the court specifically stated: "Do you understand that the maximum penalty you could get for the . . . charge [of assault in the first degree] is *from one to twenty years* [incarceration] and [a fine of] up to $15,000 so that the maximum is twenty years and $15,000? Do you understand that?" (Emphasis added.) The defendant answered affirmatively. The defendant, thus, was aware of the actual sentencing possibilities.

Furthermore, our Supreme Court has concluded that a failure to canvass the defendant as to the mandatory minimum sentence does not necessarily void a guilty plea as involuntary. *State* v. *Domian*, supra, 235 Conn. 687–89. Rather, the critical inquiry is whether such additional information would have made a difference in the defendant's decision to plead guilty. Id., 689. Because the defendant does not so contend, his claim fails.

## II

The defendant next claims that the court improperly denied his motion to withdraw the April 5, 2001 plea. "[O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Andrews*, 253 Conn. 497, 505, 752 A.2d 49 (2000).

The defendant predicates his claim on Practice Book § 39-27 (3).[4] That section specifies grounds for allowing plea withdrawal and provides in relevant part that one such ground is that "[t]he sentence exceeds that specified . . . in a plea agreement on which the judicial

---

[4] The defendant also alleges that the plea was involuntarily made and that the court failed to inform him of the statutory minimum sentence. We rejected those claims in part I.

authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered . . . ." In the present case, however, the sentence of fifteen years imprisonment does not exceed that specified in the plea agreement. The plea agreement provided that if the defendant failed to appear for sentencing, a sentence of up to twenty years could be imposed. Thus, as in *State* v. *Garvin*, supra, 242 Conn. 314, the defendant's appearance at sentencing was a condition of the agreement. As the court explained during the canvass: "Additionally, you have to understand that *as part of this agreement*, you must be present in court on the acceptance and sentencing date agreed upon by the parties. If you are not present, then all deals are off. That is, the court would be free to accept your plea previously tendered and sentence you to any sentence within the maximum allowed with respect to the charges if you fail to appear. . . . Do you understand that?" (Emphasis added.) By answering, "Yes sir," the defendant agreed to that term of the plea agreement and cannot now complain. As our Supreme Court held in *State* v. *Garvin*, supra, 314, "[b]y holding the defendant to his guilty pleas, while imposing sentences reflecting his failure to appear, the trial court did no more than enforce the terms of the plea agreement." The court did not abuse its discretion in denying the motion to withdraw the plea.

III

The defendant's final claim is that his sentence is illegal in that the court lacked authority to impose a sentence of imprisonment consecutive to his federal sentence.[5] That claim was never presented to the trial court and, hence, is unpreserved. Connecticut law is clear that a party seeking review of unpreserved claims

---

[5] The defendant was convicted of possession of crack cocaine with intent to distribute and received a federal sentence of 262 months.

under either the plain error doctrine; Practice Book § 60-5; or *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), must affirmatively request such review. See, e.g., *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 532, 876 A.2d 1178 (2005); *State* v. *Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002). Because the defendant has not done so, his claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.