# STATE OF CONNECTICUT *v.* WILLIAM PETAWAY
## (AC 27088)

McLachlan, Lavine and Mihalakos, Js.

Argued December 3, 2007—officially released May 20, 2008

*David V. DeRosa*, special public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, William Petaway, appeals from the judgment of conviction rendered when he was sentenced by the trial court after pleading guilty to robbery in the first degree under *North Carolina* v.

*Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).[1] The plea was made pursuant to a *Garvin* agreement.[2] In this appeal, the defendant claims that (1) the court, *Damiani, J.,* improperly refused to disqualify itself from adjudicating the defendant's motion to allow him to withdraw his plea, (2) Judge Damiani improperly denied the motion to withdraw the guilty plea after improperly imposing (a) a twenty-four hour house arrest[3] condition and (b) a "no arrest" condition as part of the *Garvin* agreement, and (3) the court, *Gold, J.,* improperly used probable cause, instead of preponderance of the evidence, as the standard to determine whether the defendant had breached the *Garvin* agreement. We do not agree with the defendant and therefore affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. The defendant was arrested and charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) as a result of an incident that took place in 2003. On October 20, 2003, the defendant, armed with a handgun, along with a partner, entered a gasoline station and convenience store in New Haven where they jointly stole money from the cash register.

---

[1] "Under *North Carolina* v. *Alford,* [supra], 400 U.S. 25 . . . a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Fowlkes,* 283 Conn. 735, 736 n.1, 930 A.2d 644 (2007).

[2] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement. See *State* v. *Garvin,* [242 Conn. 296, 300–302, 699 A.2d 921 (1997)]." *State* v. *Wheatland,* 93 Conn. App. 232, 235 n.3, 888 A.2d 1098, cert. denied, 277 Conn. 919, 895 A.2d 793 (2006).

[3] The court referred to this twenty-four hour house arrest condition as a "curfew," but we refer to it as twenty-four hour house arrest.

After initially rejecting a plea agreement, the defendant requested that his case be placed on the firm trial list. The defendant was scheduled to appear in court on December 17, 2004, on a motion to increase his bond, but he failed to appear. As a result, Judge Damiani ordered his $25,000 bond forfeited, ordered that the defendant be rearrested and set his new bond at $200,000.

The defendant eventually decided to plead guilty after indicating to the court that he had spoken to his attorney, Beth Merkin. Judge Damiani stated that Merkin, the defendant and the prosecutor, James G. Clark, all had agreed on a plea agreement for the defendant, namely, that he would plead guilty and receive ten years in prison, would promise to appear in court and then would return for sentencing. The court agreed to implement this plea agreement, provided that the defendant would adhere to certain conditions the court would impose. The court agreed to release the defendant, providing that he agreed to wear an ankle bracelet and promised to appear in court. If the defendant did not appear on the date set by the court, he would be sentenced to twenty years imprisonment. The court told the defendant that if he "[blew] curfew" or was "arrested for a new offense," the court would hold a hearing to determine whether he had violated those conditions. If the court found that the defendant had violated either of those conditions, it would sentence him to between ten and twenty years in prison. The defendant told the court that he understood the agreement and that he concurred in it. He then pleaded guilty under the *Alford* doctrine. Next, the court told the defendant that he had to appear on March 18, 2005, for sentencing. Finally, defense counsel noted for the record that if the defendant appeared on March 18, as directed, the state would enter either a nolle or a dismissal on the failure to appear charge that resulted from the December 17, 2004

proceeding. In response, the prosecutor stated that "[a]ll other counts, other than the one [the defendant] plead[ed] to, will be nolled."

The court reconvened proceedings prior to the March 18, 2005 date set for sentencing. On March 4, 2005, Judge Damiani indicated that he had received a report that the defendant "had been arrested on an assault charge, family violence crime in geographical area number seven" and that the defendant's bail supervisor, Janet Carnevale, had submitted to the court a report indicating that he had violated his house arrest several times. The defendant failed to appear before Judge Damiani as ordered. As a result, the court ordered the rearrest of the defendant and set his new bond at $500,000. On April 12, 2005, the defendant appeared before Judge Damiani, seeking to dismiss Merkin as his attorney. The court granted the defendant's motion and appointed a special public defender to represent him. On April 26, 2005, the defendant, represented by special public defender Michael O. Sheehan, again appeared before Judge Damiani, requesting a bond reduction. The court granted the defendant's request and set bond for $75,000 in cash only. The court stated that the defendant could post bond only at the courthouse and only with the court's permission.

The defendant next appeared before Judge Damiani on May 31, 2005. The defendant filed two motions on that day: a motion to withdraw his *Alford* plea and a motion to disqualify Judge Damiani from further presiding over his case. Judge Damiani denied the defendant's motion to disqualify him from further proceedings, stating that "[t]he motion to disqualify goes to the sentencing phase, not to the motion to withdraw." Judge Damiani disqualified himself, however, from the sentencing phase of the case because he had been involved in previous negotiations with the defense counsel regarding the number of years to which the defendant

would be sentenced. The court also denied the defendant's motion to withdraw his *Alford* plea. Judge Damiani found that the defendant agreed to the twenty-four hour house arrest and the "no arrest" condition and that the conditions were legal.

On June 8, 2005, the defendant appeared before Judge Damiani and indicated that he wanted to proceed pro se. The court granted the defendant's motion to represent himself after finding that he had made a "competent, intelligent, rational choice" to do so. On June 29 and July 1, 2005, Judge Gold presided over a hearing in which the parties presented evidence and arguments on the issues of (1) whether the conditions of the *Garvin* agreement stipulated to by the parties were valid and enforceable, and (2) whether the defendant violated those conditions. Judge Gold did not rule on the conditions of the *Garvin* agreement and violations until July 14, 2005. As a preliminary matter, the court stated that the defendant's failures to appear would play no part in its sentencing decision. The court then stated its findings. The court found that the electronic monitoring condition, or the "curfew" condition, required a twenty-four hour house arrest and that the defendant received "more than fair and accurate notice of that condition and indeed affirmatively agreed to it at the time of his plea." The court next found that the parties agreed as to the interpretation of the condition requiring no new criminal conduct. They understood this condition to mean that if the defendant engaged in any new criminal conduct in the two month period prior to sentencing, then that conduct, if proven at a hearing, would result in a sentence on the robbery charge of between ten and twenty years.

The court ruled that the conditions requiring electronic monitoring and no new criminal conduct were valid. Finally, the court found that the defendant breached both of the conditions. The court made this

finding under the reasonable doubt standard, finding that the state's evidence satisfied the highest burden of proof. Judge Gold sentenced the defendant on August 19, 2005, to twelve and one-half years in prison on the basis of his violations of the *Garvin* agreement, not his failures to appear. Additional facts will be set forth as necessary.

I

First, the defendant argues that Judge Damiani improperly refused to disqualify himself from adjudicating the motion to withdraw the *Alford* plea. We do not agree.

The following additional facts are relevant to the disposition of the defendant's claim. At the May 31, 2005 proceeding, the defendant argued that Judge Damiani should disqualify himself from further proceedings regarding the defendant because Judge Damiani was being asked to rule on the legality of the conditions he had imposed on the defendant. The defendant argued that Judge Damiani's impartiality might reasonably be questioned if he were to decide the motion to withdraw the plea. Judge Damiani denied the defendant's motion to disqualify him from further proceedings, stating that "[t]he motion to disqualify goes to the sentencing phase, not to the motion to withdraw." Furthermore, Judge Damiani explained his reasoning by stating that "[n]o other judge can go into my mind to state those reasons. So, your motion to recuse on that basis is denied."

Prior to examining the defendant's claim, we set forth the legal principles that guide our resolution of it. "[R]eview of the court's denial of the defendant's motion to disqualify is subject to the abuse of discretion standard. . . . That standard requires us to indulge every reasonable presumption in favor of the correctness of the court's determination." (Citation omitted.)

*Tracey* v. *Tracey*, 97 Conn. App. 278, 286, 903 A.2d 679 (2006).

The defendant cites both the rules of practice and the Code of Judicial Conduct to support his argument that Judge Damiani should have recused himself. The defendant states that Practice Book § 1-22 (a) provides in relevant part that "[a] judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Canon 3 (c) of the Code of Judicial Conduct . . . ." Canon 3 (c) (1) of the Code of Judicial Conduct provides that "[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ."

The defendant argued in his brief that there were numerous reasons why Judge Damiani's impartiality might reasonably be questioned. First, a reasonable person might question a judge's impartiality when the judge is being asked to question his or her own judgment while "assessing the ability of the defendant to reasonably understand the conditions the court itself largely designed and imposed." Second, Judge Damiani's actions suggested partiality in two instances: Judge Damiani raised the defendant's bond from a promise to appear to $500,000 after learning that the defendant had been arrested in connection with an assault, and Judge Damiani reduced the defendant's bond, at his request, to $75,000 but required that it be posted in cash only and that it be posted before Judge Damiani.

"Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that

the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard . . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his . . . impartiality, on the basis of all of the circumstances." (Internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 50, 830 A.2d 240 (2003).

In the present case, we conclude that none of Judge Damiani's conduct would lead a reasonable person to question his impartiality concerning the defendant. The defendant cites no relevant case law to support his proposition that a trial court that accepted a defendant's plea pursuant to a *Garvin* agreement should not preside over his motion to withdraw the plea. The defendant relies on *State* v. *Gradzik*, 193 Conn. 35, 47, 475 A.2d 269 (1984), for the proposition that a judge's participation in plea agreement negotiations and then subsequently in the sentencing is improper. In the present case, however, Judge Damiani recused himself from the sentencing of the defendant.

Furthermore, the defendant cites no conduct that would cause a reasonable person to question Judge Damiani's impartiality. Judge Damiani's raising the defendant's bond to $500,000 after the defendant was arrested in connection with an assault while awaiting sentencing for a conviction of robbery in the first degree is not behavior that reflects any bias on the part of the judge. It was reasonable conduct and well within the judge's discretion. In addition, Judge Damiani's reducing the bond to $75,000 and then allowing the defendant to post it only in cash after appearing before him was not

indicative of bias. If anything, Judge Damiani's reducing the defendant's bond to $75,000 was favorable to the defendant. At the April 26, 2005 hearing, Judge Damiani reduced the defendant's bond to accommodate the defendant's request to be held at a New Haven facility, thereby making it easier for the defendant's attorney to have contact with him.

Judge Damiani did not demonstrate any conduct that might lead a reasonable person to question his impartiality. As a result, there was no basis under the Code of Judicial Conduct for Judge Damiani to recuse himself from the hearing on the defendant's motion to withdraw the *Alford* plea. Therefore, the court did not abuse its discretion in denying the defendant's motion to disqualify itself from further proceedings concerning the defendant.

## II

Next, the defendant argues that Judge Damiani improperly denied the motion to withdraw the guilty plea after imposing (1) a twenty-four hour house arrest and (2) a "no arrest" condition as part of the *Garvin* agreement. We disagree.

Prior to examining the defendant's claim, we set forth the legal principles that guide our review. "A . . . plea, once accepted, may be withdrawn only with the permission of the court. . . . The court is required to permit the withdrawal of a guilty plea upon proof of any ground set forth in Practice Book § [39-27].[4] . . . Whether such

[4] Practice Book § 39-27 provides: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty." (Internal quotation marks omitted.) *State* v. *Brooks*, 89 Conn. App. 427, 432, 874 A.2d 280 (2005).

A

First, the defendant claims that the court improperly denied his motion to withdraw his guilty plea after imposing a twenty-four hour house arrest condition on him. Specifically, he claims that he did not agree to the twenty-four hour house arrest that resulted. Instead, the defendant argues that he agreed to a curfew, in that there would be certain hours of the day during which he would be allowed to leave his house. We do not agree.

The following additional facts are relevant to our disposition of the defendant's claim. At the January 19, 2005 proceeding, Judge Damiani discussed in detail the twenty-four house arrest condition that would be imposed on the defendant as part of the plea agreement. The transcript from that proceeding is relevant in part:

"The Court: Now, he's going to be under house arrest. Is that twenty-four hours a day?

"[Defense Counsel]: That's what was agreed to. That's correct.

"The Court: Do you understand that? People could come and see you, you can't go out and see them.

"[The Defendant]: Can't leave the house at all?

"(4) The plea resulted from the denial of effective assistance of counsel;
"(5) There was no factual basis for the plea; or
"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

"The Court: That's what they agreed to.

"[Defense Counsel]: From what I understood, there's maybe, a fifty foot radius—

"[The Prosecutor]: Yeah, the—I mean—

"[Defense Counsel]: He asked me if he could do some work on his car in the driveway. I—I—

"The Court: I don't know if [the monitor is] going to pick that up.

\* \* \*

"The Court: What Mr. Clark's agreeing to is that he'll wear the bracelet under house arrest; however, he'll be permitted to go about the property within whatever acceptable radius there is for the—that bracelet.

"[The Prosecutor]: Yes.

"[Defense Counsel]: Okay.

"The Court: But, that you can't leave the property. If it's fifty feet, that's as far as you can go, do you understand that? . . ."

At the May 31, 2005 proceeding, Judge Damiani found that the record was clear that the defendant had agreed to twenty-four hour house arrest at the January 19, 2005 proceeding. The court also quoted from the transcript of that proceeding in which the defendant's attorney acknowledged that the twenty-four hour house arrest had been agreed to. Furthermore, the court noted that the defendant did not raise any objection to the twenty-four hour house arrest condition at the January 19, 2005 proceeding.

In the present case, the court made findings regarding the parties' interpretation of the plea agreement, which we analyze under the clearly erroneous standard of review. See *State* v. *Olenick*, 98 Conn. App. 638, 642,

910 A.2d 1002 (2006), cert. denied, 281 Conn. 920, 918 A.2d 273 (2007). "[T]o the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 642–43.

The defendant argues, first, that he did not have actual or foreseeable knowledge of the nature of the twenty-four hour house arrest condition. The defendant claims that the condition had latent ambiguities, which made it impossible for him to be aware of the actual meaning of the constraints being imposed on him under this "curfew" condition. Furthermore, the defendant claims that the court did not meet its burden of ensuring that he had a full understanding of what the condition of the plea meant. On the basis of our review of the January 19, 2005 proceeding, we conclude that there is ample evidence in the record to support the court's finding that the defendant was aware of the meaning of the house arrest condition. As the previously cited transcript reveals, the court made it clear to the defendant that the "curfew" being imposed was, in fact, twenty-four hour house arrest. The defendant's attorney even stated that "[t]hat's what was agreed to." Furthermore, the court asked the defendant whether he understood that condition and that people could come to see him but that he could not go out to see them. The defendant asked, "[c]an't leave the house at all?" The court replied, "[t]hat's what they agreed to." The defendant did not object or ask for any further clarification with respect to this condition. We conclude, therefore,

that the court's finding that the defendant was aware of the meaning of house arrest was not clearly erroneous.

The defendant, therefore, did not prove that his plea was made involuntarily or without knowledge of the conditions to which he agreed. Because the defendant did not prove that any of the bases set out in Practice Book § 39-27 for withdrawing a guilty plea existed, the court did not abuse its discretion in denying his motion to withdraw his guilty plea with respect to the house arrest condition.

## B

Next, the defendant claims that the court improperly denied his motion to withdraw his guilty plea after imposing a "no arrest" condition. We do not agree.

At the May 31, 2005 proceeding, the defendant moved to withdraw his *Alford* plea in part because Judge Damiani had imposed an illegal "no arrest" condition as part of the *Garvin* plea agreement.[5]

This issue is controlled by our Supreme Court's decision in *State* v. *Stevens*, 278 Conn. 1, 895 A.2d 771 (2006). In *Stevens*, our Supreme Court held that the "no arrest" condition imposed on the defendant as part of her *Garvin* plea agreement was valid, stating: "Under the facts of the present case, therefore, we conclude that the defendant's arrest, supported by probable cause, in vio-

---

[5] The defendant relied on *State* v. *Stevens*, 85 Conn. App. 473, 857 A.2d 972 (2004), rev'd, 278 Conn. 1, 895 A.2d 771 (2006), which prohibits "no arrest" conditions because they are conditions over which the defendant has no control. The defendant argued in his brief that the fact that this decision has been overturned by our Supreme Court "is of no importance" because the law at the time that the defendant entered the plea was that the "no arrest" condition violated his right to due process. We are not persuaded by this argument. The opinion rendered by this court in *Stevens* was deemed incorrect by our Supreme Court in *State* v. *Stevens*, 278 Conn. 1, 895 A.2d 771 (2006). Therefore, we cannot fault the trial court for following good law.

lation of her *Garvin* agreement, was a proper basis for the enhanced sentence." *State* v. *Stevens*, supra, 13.

In the present case, Judge Damiani imposed a condition that is legal pursuant to *Stevens*. Judge Damiani stated that if the court found probable cause to believe that the defendant had committed a new offense, then it could take that into consideration in imposing sentence. This "no arrest" condition imposed by Judge Damiani as part of the defendant's *Garvin* agreement was well within the description of the type of condition sanctioned by our Supreme Court in *Stevens*. Therefore, the court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea.

### III

Finally, the defendant argues that Judge Gold improperly used probable cause, instead of preponderance of the evidence, as the standard to determine whether he breached the *Garvin* agreement. We do not agree with the defendant.

Prior to examining the claim, we set forth the standard of review. "When a party contests the burden of proof applied by the court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Wieselman* v. *Hoeniger*, 103 Conn. App. 591, 595–96, 930 A.2d 768, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007).

The following additional facts are relevant to our disposition of the defendant's claim. At the January 19, 2005 proceeding before Judge Damiani, the court set forth the burden of proof for the violation of the conditions of the *Garvin* agreement as "probable cause." The court stated, in relevant part: "You'd have a hearing, put those police, whoever is the complainant, on the [witness] stand, and if, in fact, there's probable cause that you were the one who committed the—the new

offense, that's a factor I take into account." At the July 14, 2005 proceeding, Judge Gold discussed the standard of review to be used in determining whether the defendant had violated the *Garvin* agreement. The court stated, in relevant part: "I suppose it is possible . . . that even a higher standard will someday [be] deemed appropriate by a higher court. For present purposes, however, it is ultimately unnecessary for me to determine whether probable cause is appropriate or whether some higher burden is appropriate. Because having considered the evidence, even if this court were to require the state to prove a breach beyond a reasonable doubt, I would conclude that the state's evidence here has satisfied even this exacting standard."

The defendant argued, citing Justice Norcott's concurring opinion in *Stevens*, that "a more appropriate, and constitutionally required, burden of proof for a breach of a *Garvin* plea agreement is preponderance of the evidence." Furthermore, the defendant argued, again citing Justice Norcott's concurring opinion in *Stevens*, that "[t]here is [a] developing body of federal constitutional jurisprudence [that] establishes that breach of a condition on a conditional binding plea agreement, referred to in Connecticut as a *Garvin* plea agreement, must be proven by preponderance of the evidence." Therefore, the defendant argued, the probable cause burden of proof dictated by Judge Damiani and used by Judge Gold is unconstitutional. The defendant argued that Judge Gold's finding that the defendant had violated the conditions of the *Garvin* agreement under the "beyond a reasonable doubt" standard was merely a proposal of a "hypothetical or advisory decision as to how the court would rule under a different set of facts absent the plea agreement . . . ." The defendant, therefore, insists that the court made its findings under the probable cause standard.

We are not persuaded by the defendant's argument. The defendant's argument that Judge Gold used the probable cause standard to determine whether he breached the *Garvin* agreement is not supported by the record. Out of concern for the fact that the burden of proof regarding a *Garvin* agreement might one day be higher than the minimum indicia of reliability[6] standard required prior to and at the time, the court clearly stated: "[I]t is ultimately unnecessary for me to determine whether probable cause is appropriate or whether some higher burden is appropriate. Because having considered the evidence, even if this court were to require the state to prove a breach *beyond a reasonable doubt*, I would conclude that the state's evidence here has satisfied even this exacting standard." (Emphasis added.) Therefore, even if the probable cause standard was improper, the court did not violate the defendant's right to due process by utilizing the highest standard of proof of beyond a reasonable doubt. As such, we conclude that Judge Gold applied a proper standard of proof in determining whether the defendant had breached his *Garvin* agreement.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] "As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. . . . As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." (Citation omitted;

internal quotation marks omitted.) *State* v. *Eric M.*, 271 Conn. 641, 650, 858 A.2d 767 (2004).