STATE OF CONNECTICUT *v.* JOHN S. HANSEN
(AC 33797)

DiPentima, C. J., and Gruendel and Sheldon, Js.

Argued February 21—officially released July 2, 2013

*David J. Reich*, for the appellant (defendant).

*Nancy L. Walker*, special deputy assistant state's attorney, with whom, on the brief, were *Matthew Gedansky*, state's attorney, and *Charles Johnson*, assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. On February 11, 2010, the defendant, John S. Hansen, pleaded guilty to attempt to commit larceny in the third degree, larceny in the sixth degree, identity theft in the third degree, forgery in the second degree, and assault in the third degree. In exchange for those guilty pleas, entered pursuant to a *Garvin* agreement,[1] the court agreed to sentence the defendant to a total effective sentence of two years and one day of incarceration followed by two and one-half years of special parole, on condition that he appear before the court on his sentencing date, April 29, 2010, and that he not get arrested in the interim. On April 18, 2010, the defendant was arrested and charged with breach

---

[1] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement. See *State* v. *Garvin*, [242 Conn. 296, 300–302, 699 A.2d 921 (1997)]." (Internal quotation marks omitted.) *State* v. *Petaway*, 107 Conn. App. 730, 732 n.2, 946 A.2d 906, cert. denied, 289 Conn. 926, 958 A.2d 162 (2008).

of peace and interfering with a peace officer. Thereafter, when the defendant failed to appear in court on his April 29, 2010 sentencing date, he was ordered re-arrested and was charged with five counts of failure to appear. When the defendant was finally returned to court for sentencing on the charges to which he had pleaded guilty under the *Garvin* agreement, the court found that he had breached the conditions of the *Garvin* agreement, and thus sentenced him to a total effective sentence of four years and nine months of incarceration. This appeal followed.

On appeal, the defendant challenges the constitutionality of the *Garvin* agreement and claims that the court erred in failing to inquire into a possible conflict of interest between him and his attorney. The defendant failed to preserve his claims, which we set forth in greater detail below, before the trial court and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We review his claims because the record is adequate for review and the claims are of constitutional magnitude. See *State* v. *Reynolds*, 126 Conn. App. 291, 298, 11 A.3d 198 (2011). Because, however, we conclude that no constitutional violation exists, we affirm the judgment of the trial court.

I

The defendant first claims that the *Garvin* agreement violated his due process rights because its terms did not afford him an opportunity to contest any alleged violations of that agreement. The state opposes the defendant's claim in substance, but also contends that the claim is moot because, since the date of his sentencing, the defendant pleaded guilty to the failure to appear charges, which were based upon the failure to appear in court for his sentencing on April 29, 2010. On the basis of those guilty pleas, the state claims that there

is no controversy as to whether the defendant failed to appear at the April 29, 2010 sentencing proceeding, or that he thereby violated his *Garvin* agreement. The defendant, however, is not claiming that he did not violate the *Garvin* agreement. Rather, he is claiming that the *Garvin* agreement itself was unconstitutional because it did not expressly provide that he would have the opportunity to contest any alleged violation of the agreement.[2] Because the defendant's challenge is to the *Garvin* agreement itself, not whether he violated that agreement, his convictions for failure to appear do not render his due process claim moot.

Turning to the substance of the issues on appeal, the defendant first claims that his *Garvin* agreement violated his constitutional right to due process in that it failed to provide that he would be afforded the opportunity to contest any allegations that he breached either of the conditions of that agreement.

"It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers." (Citations omitted; internal quotation marks omitted.) *State* v. *Andrews*, 253 Conn. 497, 502–503, 752 A.2d 49 (2000).

"The . . . constitutional essentials for the acceptance of a plea of guilty are included in our rules and

---

[2] The defendant's claim that the *Garvin* agreement was unconstitutional would seem to suggest that he is seeking to withdraw that plea, but he is not. Rather, he is asking this court to vacate his sentence and remand the case to the trial court with direction to impose the sentence agreed to in the original plea agreement.

. . . provide that the trial court must not accept a guilty plea without first addressing the defendant personally in open court and determining that the defendant fully understands the [plea] and that the plea is made voluntarily . . . . There is no requirement, however, that the defendant be advised of every possible consequence of such a plea. . . . Although a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . . In Connecticut, the direct consequences of a defendant's plea include only the mandatory minimum and maximum possible sentences . . . the maximum possible consecutive sentence . . . the possibility of additional punishment imposed because of previous conviction(s) . . . and the fact that the particular offense does not permit a sentence to be suspended. . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Citations omitted; internal quotation marks omitted.) Id., 504–505. It is equally well settled that "due process requires that the defendant be given the opportunity to contest the evidence upon which the trial court relies for sentencing purposes . . . ." *State* v. *Stevens*, 278 Conn. 1, 12, 895 A.2d 771 (2006).

There is no basis in law, however, for the defendant's claim that when a defendant enters into a *Garvin* agreement, the court must explain all of the findings that it would later need to make, and all of the procedures that it would later need to follow, if he were alleged to have violated that agreement. Nor is there any requirement that the court inform the defendant that it will adhere to the constitutional mandates of due process in conducting those proceedings.

The defendant's claim that the *Garvin* agreement violated his due process rights, in that it did not provide that he could contest any allegation that he breached

that agreement, is also belied by the fact that he had prepared a written statement to read to the court at his ultimate sentencing proceeding, wherein he explained to the court the reason why he had not appeared for sentencing on April 29, 2010. In addressing the court, the defendant attempted to explain his absence on April 29, 2010, by stating that he was at the hospital with an injury and claiming that he had not understood the importance of appearing in court on that date. He then apologized to the court "for the new charges and the failure to appear."[3] The defendant's preparation of that statement in advance of his sentencing proceeding demonstrated his anticipation that he would indeed be given the opportunity to explain his earlier actions, and thereby contest the claim that he had breached the *Garvin* agreement. We thus reject his claim that the *Garvin* agreement was unconstitutional.

II

The defendant also contends that the trial court deprived him of conflict-free representation by failing to inquire into a possible conflict of interest between himself and his attorney. In so arguing, the defendant contends that the court had an obligation, sua sponte, to explore the possible existence of such a conflict because it knew or reasonably should have known that a conflict existed. We disagree.

We begin our analysis of the defendant's claim by setting forth the applicable standard of review. "Almost without exception, we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because

---

[3] In finding that the defendant breached the *Garvin* agreement, the court rejected his excuse for not appearing at the April 29, 2010 proceeding. We note that the defendant did not claim before the trial court, and does not claim on appeal, that his failure to appear was based upon circumstances beyond his control.

of the need for a full evidentiary record for such [a] claim. . . . On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the trial court, rather than by those of his counsel. . . . We have addressed such claims, moreover, only where the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development. . . . We, therefore, review the defendant's claim as a question of law and, as with all questions of law, our review is plenary." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Parrott*, 262 Conn. 276, 285–86, 811 A.2d 705 (2003).

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to [the] effective assistance of counsel. . . . Where a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest." (Internal quotation marks omitted.) *State* v. *Cator*, 256 Conn. 785, 793, 781 A.2d 285 (2001). "There are two circumstances under which a trial court has a duty to inquire with respect to a conflict of interest: (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a particular conflict exists . . . ." (Internal quotation marks omitted.) Id., 793–94; *State* v. *Thompson*, 118 Conn. App. 140, 146–47, 983 A.2d 20 (2009), cert. denied, 294 Conn. 932, 986 A.2d 1057 (2010).

The defendant claims that the court should have known of a conflict because "[t]rial counsel was clearly involved in events that led to his . . . failure to

appear." The defendant stated in his aforementioned letter to the court that his attorney had not fully explained to him the potential consequences of failing to appear at the April 29, 2010 sentencing hearing when they spoke on that date. The defendant contends that, on the basis of counsel's inadequate explanation of such contingencies, counsel was ineffective, and thus that counsel should have testified as to the nature of his explanation at the hearing to determine if he had violated the *Garvin* agreement by failing to appear. Although the defendant's claim is somewhat convoluted, we need not attempt to parse its meaning.[4] The simple fact is that the defendant was clearly informed by the court of the requirement that he appear at the April 29, 2010 proceeding at the time that he entered his guilty pleas. The court canvassed the defendant fully to confirm that the defendant understood that requirement and the potential consequences of his failure to comply with it. Because the defendant had been apprised of the possible consequences of his failure to appear before the court on April 29, 2010, there is no factual basis upon which the court should have suspected a potential conflict grounded in his claim that his attorney failed to advise him properly of those consequences. The defendant's claim thus fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The defendant claims that: "Trial counsel had a potential conflict of interest because he could not effectively challenge whether or not his client was fully informed of the failure to appear at the sentencing hearing without asserting that he was ineffective in the way he advised his client."