******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM PETAWAY *v.* COMMISSIONER
OF CORRECTION
(AC 36772)

Beach, Mullins and Bishop, Js.

*Argued April 14—officially released October 27, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Kwak, J.)

*Temmy Ann Pieszak*, resource attorney for habeas
corpus matters, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with
whom, on the brief, was *George Jepsen*, attorney general,
for the appellee (respondent).

*Opinion*

BISHOP, J. Practice Book § 23-24 provides in relevant part that when a petition for a writ of habeas corpus is filed, the court, on review of the petition, "shall issue the writ unless it appears that: (1) the court lacks jurisdiction . . . ." In this matter, the habeas court, in the performance of its function pursuant to § 23-24, declined to issue the petitioner, William Petaway, a writ of habeas corpus, reasoning that it lacked jurisdiction over the claims set forth in his petition concerning the change in his eligibility date for parole consideration. On appeal, the petitioner claims that the court incorrectly concluded that it lacked jurisdiction on the basis of his assertion that a 2013 statutory change that operates to delay his earliest date of parole eligibility violates the constitutional protection afforded to him against the ex post facto application of penal statutes. We affirm the judgment of the habeas court.

The following procedural history and factual underlayment are pertinent to our review of the petitioner's claim. On August 19, 2005, the petitioner was sentenced to twelve and one-half years imprisonment on the basis of his conviction for robbery in the first degree, arising from an incident that took place on October 20, 2003. The petitioner's conviction was affirmed by this court. *State* v. *Petaway*, 107 Conn. App. 730, 946 A.2d 906, cert. denied, 289 Conn. 926, 958 A.2d 162 (2008). The petitioner remains in the custody of the respondent, the Commissioner of Correction.

In 2003, at the time of the petitioner's criminal conduct, and in 2005, when he was convicted, there was no statutory provision that permitted inmates to earn credits toward reducing the length of their sentences.[1] Also, due to the nature of the offense for which he was convicted, the petitioner, at the time of his conviction, was not eligible for parole consideration before serving 85 percent of his sentence. See General Statutes § 54-125a (b).

On July 9, 2013, the petitioner filed a petition for a writ of habeas corpus in which he acknowledged that at the time of his conviction there was no statutory provision that permitted inmates to earn good time credit to reduce their sentences.[2] He alleged, as well, that in 2011, the General Assembly enacted No. 11-51, § 22, of the 2011 Public Acts, later codified in General Statutes § 18-98e. This legislation provided that certain prisoners convicted for crimes committed after October 1, 1994, "may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, at the discretion of the Commissioner of Correction" for certain specified positive behaviors. General Statutes § 18-98e (a). This legislation was enacted in conjunction with a revision to § 54-125a (b) regarding parole, which pro-

vided in relevant part that a person convicted of a violent crime would not be eligible for parole consideration "until such person has served not less than eighty-five percent of the definite sentence imposed *less any risk reduction credit earned under the provisions of section 18-98e.*" (Emphasis added.) General Statutes (Rev. to 2013) § 54-125a (b). Accordingly, as of the date of the 2011 enactments, the petitioner was eligible, at the respondent's discretion, to earn risk reduction credit toward his sentence and also toward the date of his first eligibility of parole consideration. Pursuant to this legislation, the Department of Correction did, in fact, award the petitioner credits, measured in days, toward his sentence as well as toward his earliest parole eligibility date.

The 2011 revision to § 54-125a (b), however, was short lived. In 2013, the General Assembly again amended § 54-125a (b). The 2013 enactment provided that a violent offender, such as the petitioner, must serve 85 percent of the definite sentence imposed before becoming eligible for parole. See General Statutes § 54-125a (b). The effect of this change is that the credits that an inmate may earn toward his sentence no longer operate to advance that person's earliest parole eligibility date. It is the change in the legislation between 2011 and 2013 that the petitioner alleges violates his constitutional protection against ex post facto legislation. We are not persuaded.

At the outset, we set forth the standard of review. It is well settled that "[a] determination regarding a trial court's subject matter jurisdiction is a question of law and, therefore, we employ the plenary standard of review and decide whether the court's conclusions are legally and logically correct and supported by the facts in the record." (Internal quotation marks omitted.) *State* v. *Williamson*, 155 Conn. App. 215, 219, 109 A.3d 924 (2015).

Next, we consider the nature of the prohibition against ex post facto laws. In *Peugh* v. *United States*, U.S. , 133 S. Ct. 2072, 186 L. Ed. 2d 84 (2013), the United States Supreme Court referred to its 1798 opinion in *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648 (1798), in which Justice Samuel Chase, speaking for the majority, outlined the nature of an ex post facto law as follows: "[First]. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. [Second]. Every law that aggravates a crime, or makes it greater than it was, when committed. [Third]. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. [Fourth]. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the

offender." (Emphasis omitted.)

A review of Justice Chase's discussion of the nature of an ex post facto law reveals, as a significant common feature, that for a law to violate the prohibition, it must feature some change from the terms of a law in existence at the time of the criminal act. That feature is entirely sensible, as a core purpose in prohibiting ex post facto laws is to ensure fair notice to a person of the consequences of criminal behavior. As explained by the United States Supreme Court, laws that impose a greater punishment after the commission of a crime than annexed to the crime at the time of its commission run afoul of the ex post facto prohibition because such laws implicate the central concerns of the ex post facto clause: "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver* v. *Graham*, 450 U.S. 24, 30, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981). None of those concerns pertains to the appeal at hand.

Here, the petitioner makes no claim that legislation regarding eligibility for parole consideration became more onerous after the date of his criminal behavior. Rather, he claims that new legislation enacted in 2011, several years after his criminal conduct and subsequent incarceration, conferred a benefit on him that was then taken away in 2013. Such a claim, however, does not implicate the ex post facto prohibition because the changes that occurred between 2011 and 2013 have no bearing on the punishment to which the petitioner's criminal conduct exposed him when he committed a robbery in 2003.

In support of his claim, the petitioner relies on our Supreme Court's opinion in *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 786 A.2d 1091 (2002). The petitioner's reliance is misplaced. In *Johnson*, our Supreme Court stated that the petitioner had asserted a cognizable ex post facto claim when he alleged that application of the "85 percent rule" to his circumstances violated the ex post facto probation. Id., 818–19. A review of *Johnson* reveals that, in 1995, when Dwayne Johnson committed the crimes for which he was sentenced in 1996, similarly situated offenders were first eligible for parole consideration after completing 50 percent of their sentences but that, as a result of legislation enacted after his criminal conduct, Johnson would not be eligible for parole until completing 85 percent of his sentence. Id., 809–10. Although the court acknowledged that an inmate has no liberty interest in being granted parole, the court found, nevertheless, that the habeas court had jurisdiction because Johnson had made a cognizable ex post facto claim by asserting that the change in the law between the date of his criminal act and his later incarceration violated the prohibition against ex post facto penal legislation. Id., 818–19. Nei-

ther the underlying facts in *Johnson* nor the court's reasoning supports the petitioner's claim in the present case.

In *Johnson*, the court, in determining that Johnson had made a colorable ex post facto claim, observed: "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." (Internal quotation marks omitted.) Id., 817.

Here, unlike in *Johnson*, the petitioner makes no claim that a change in the law after 2003 extended the length of his incarceration or delayed the date of his first eligibility for parole consideration beyond the time periods in existence at the time of his criminal conduct. In sum, he makes no claim rooted in ex post facto jurisprudence. Thus, unlike the petitioner in *Johnson*, the petitioner in the present case has not made a colorable ex post facto claim.[3] A merely conclusory allegation of an ex post facto violation without any legally supporting factual allegations is insufficient to constitute a colorable ex post facto claim.

Shorn of its ex post facto designation, the petitioner's claim is no more than a complaint that long after he committed robbery and was sentenced, favorable legislation was enacted that gave him, at the respondent's discretion, an opportunity for earlier parole consideration but that legislation was later repealed, putting him back into the same position he had been in in 2003 and 2005. The petitioner, however, has no liberty interest in parole eligibility, and, therefore, such a claim does not implicate the jurisdiction of the habeas court. See *Baker* v. *Commissioner of Correction*, 281 Conn. 241, 914 A.2d 1034 (2007) (parole eligibility under § 54-125a does not constitute cognizable liberty interest sufficient to invoke habeas court's jurisdiction). We conclude that because the petitioner has no liberty interest in being granted parole and his petition does not assert a colorable ex post facto claim, the habeas court properly declined to issue the writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Prior to 1994, Connecticut had a statute in effect through which an inmate committed to custody of the respondent could earn credits at the rate of a certain number of days per month toward advancing his or her anticipated release date. Before the petitioner's criminal conduct took place, however, the General Assembly repealed the statutory provisions for good time credits.

[2] It is important to note the procedural posture that brings the present appeal before this court. On November 26, 2013, the habeas court declined to issue the writ of habeas corpus pursuant to Practice Book § 23-24 (a)

(1), holding that it lacked jurisdiction and indicating that "[p]arole eligibility is not a valid habeas claim." On December 17, 2013, the court denied the petitioner's motion to reconsider the order declining to issue the writ. On January 16, 2014, the petitioner filed a petition for certification to appeal, identifying the claim in his habeas petition as being an ex post facto claim and specifically arguing that the habeas court had jurisdiction over his ex post facto claim. The court initially denied the petition for certification to appeal, however, pursuant to a motion for reconsideration, the court granted the petition on April 7, 2014.

[3] Indeed, it appears that the petitioner has benefitted from the enactment of §§ 54-125a and 18-98e because he has received risk reduction credits toward a reduction of his sentence, a benefit not available to him at the time he committed the robbery for which he is serving a sentence of imprisonment.

––––––––––––––––––––––––